No. 25–1383

<hr>

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

<hr>

EXPRESS SCRIPTS, INC.; EVERNORTH HEALTH, INC.; ASCENT HEALTH SERVICES LLC; MEDCO HEALTH SERVICES, INC.; CAREMARK RX, L.L.C.; ZINC HEALTH SERVICES, LLC; OPTUMRX, INC.; OPTUMRX HOLDINGS, LLC; EMISAR PHARMA SERVICES LLC,

*Plaintiffs-Appellants*,

v.

FEDERAL TRADE COMMISSION; ANDREW N. FERGUSON, *in his official capacity as Commissioner and Chair of the United States Federal Trade Commission*; REBECCA KELLY SLAUGHTER, *in her official capacity as Commissioner of the United States Federal Trade Commission*; ALVARO M. BEDOYA, *in his official capacity as Commissioner of the United States Federal Trade Commission*; D. MICHAEL CHAPPELL, *in his official capacity as Federal Trade Commission Chief Administrative Law Judge*,

*Defendants-Appellees*.

<hr>

Appeal from the United States District Court
for the Eastern District of Missouri
(No. 4:24-cv-01549, Hon. Matthew T. Schelp)

<hr>

## BRIEF OF AMICUS CURIAE
## AMERICANS FOR PROSPERITY FOUNDATION
## IN SUPPORT OF APPELLANTS AND REVERSAL

<hr>

Michael Pepson
AMERICANS FOR PROSPERITY FOUNDATION
4201 Wilson Blvd., Ste. 1000
Arlington, VA 22203
571.329.4529
mpepson@afphq.org
*Attorney for Amicus Curiae*

April 23, 2025

# RULE 26.1 CORPORATE DISCLOSURE STATEMENT

The *amicus curiae* Americans for Prosperity Foundation is a nonprofit corporation. It has no parent companies, subsidiaries, or affiliates that have issued shares or debt securities to the public.

Appellate Case: 25-1383     Page: 2     Date Filed: 04/23/2025 Entry ID: 5509664

# TABLE OF CONTENTS

RULE 26.1 CORPORATE DISCLOSURE STATEMENT...................................i

TABLE OF AUTHORITIES ...................................................................iii

INTEREST OF *AMICUS CURIAE*........................................................1

SUMMARY OF ARGUMENT .................................................................2

ARGUMENT ..........................................................................................4

I.    The FTC's Administrative Prosecution Violates Article III and Is Therefore Void Ab Initio..............................................................................4

    A.   The FTC's Administrative Prosecution Implicates Private Rights........4

    B.   The Constitution Exclusively Vests the Judicial Power To Find Facts and Independently Interpret the Law in Article III Courts ..........................8

    C.   The FTC Cannot Possess or Exercise Article III Judicial Power ..........10

    D.   The Commissioners Are Usurpers In An Unlawful Office Whose Inhouse Enforcement Actions Are Void Ab Initio ..............................................16

II.   The FTC's Administrative Prosecution Violates Due Process .....................17

    A.   The FTC's Administrative Process Is Rigged Against Respondents.....17

    B.   The FTC's Combination of Investigative, Prosecutorial, and Judicial Functions Violates Due Process............................................................19

III. Circuit Precedent Does Not Excuse FTC's Constitutional Violations...........22

IV. The Sky Will Not Fall If This Court Enforces the Constitution's Demands .24

CONCLUSION ......................................................................................25

CERTIFICATE OF COMPLIANCE ......................................................26

CERTIFICATE OF SERVICE ..............................................................27

Appellate Case: 25-1383     Page: 3     Date Filed: 04/23/2025 Entry ID: 5509664

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.L.A. Schechter Poultry Corp. v. United States*,
295 U.S. 495 (1935)..................................................................6

*AMG Capital Mgmt., LLC v. FTC*,
593 U.S. 67 (2021).................................................................16

*Arkansas Wholesale Grocers' Association v. FTC*,
18 F.2d 866 (8th Cir. 1927) ..............................................22, 23

*Austin v. Shalala*,
994 F.2d 1170 (5th Cir. 1993) ...............................................25

*Axon Enter. v. FTC*,
598 U.S. 175 (2023)............................ 5, 6, 8, 9, 12, 13, 14, 18, 22, 24

*Axon Enter. v. FTC*,
986 F.3d 1173 (9th Cir. 2021) ................................................18

*B&B Hardware, Inc. v. Hargis Indus.*,
575 U.S. 138 (2015)........................................................10, 11, 12

*Bowsher v. Synar*,
478 U.S. 714 (1986).................................................................11

*Calcutt v. FDIC*,
37 F.4th 293 (6th Cir. 2022) ..........................................8, 14, 16, 17

*Caperton v. A. T. Massey Coal Co.*,
556 U.S. 868 (2009).................................................................22

*Career Colls. & Sch. of Tex. v. United States Dep't of Educ.*,
98 F.4th 220 (5th Cir. 2024) ....................................................5

*CFTC v. Schor*,
478 U.S. 833 (1986)..................................................................9

*Chamber of Commerce v. FTC*,
280 F. 45 (8th Cir. 1922) ....................................................22, 23

iii

*City of Arlington v. FCC*,
    569 U.S. 290 (2013)......................................................................................11

*Collins v. Yellen*,
    594 U.S. 220 (2021)......................................................................................17

*Dep't of Transp. v. Ass'n of Am. R.R.*,
    575 U.S. 43 (2015)......................................................................................9, 10

*Donziger v. United States*,
    143 S. Ct. 868 (2023)....................................................................................19

*Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*,
    537 F.3d 667 (D.C. Cir. 2008)......................................................................23

*FTC v. Facebook, Inc.*,
    581 F. Supp. 3d 34 (D.D.C. 2022)................................................................19

*FTC v. Morton Salt Co.*,
    334 U.S. 37 (1948).......................................................................................15

*FTC v. Ruberoid Co.*,
    343 U.S. 470 (1952).....................................................................................10

*Garcia v. Garland*,
    64 F.4th 62 (2d Cir. 2023) ...........................................................................11

*Granfinanciera v. Nordberg*,
    492 U.S. 33 (1989)........................................................................................8

*Great-West Life & Annuity Ins. Co. v. Knudson*,
    534 U.S. 204 (2002).....................................................................................15

*Hildreth's Heirs v. M'Intire's Devisee*,
    24 Ky. 206 (Ky. 1829) .................................................................................16

*Illumina, Inc. v. FTC*,
    88 F.4th 1036 (5th Cir. 2023) ......................................................................16

*Impax Labs., Inc. v. FTC*,
    994 F.3d 484 (5th Cir. 2021) .......................................................................13

iv

*In re Murchison*,
349 U.S. 133 (1955).............................................................19

*Kilbourn v. Thompson*,
103 U.S. 168 (1880).............................................................24

*Lorenzo v. SEC*,
872 F.3d 578 (D.C. Cir. 2017).............................................14

*Lynch v. United States*,
292 U.S. 571 (1934)..............................................................5

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024).............................................................24

*Marbury v. Madison*,
5 U.S. (1 Cranch) 137 (1803) .............................................24

*Morrison v. Olson*,
487 U.S. 654 (1988).............................................................11

*Murray's Lessee v. Hoboken Land & Improvement Co.*,
59 U.S. 272, 18 How. 272 (1856)......................................8, 9

*NLRB v. Wm. Tehel Bottling Co.*,
129 F.2d 250 (8th Cir. 1942) ..............................................15

*Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*,
458 U.S. 50 (1982)................................................................8

*Norton v. Shelby Cnty.*,
118 U.S. 425 (1886)........................................................16, 17

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*,
584 U.S. 325 (2018)...............................................................9

*Ortiz v. United States*,
585 U.S. 427 (2018)........................................................15, 17

*Regal Knitwear Co. v. NLRB*,
324 U.S. 9 (1945)................................................................15

v

*SEC v. Jarkesy,*
603 U.S. 109 (2024)..................................................... 7, 8, 13, 16, 17, 20, 21, 24

*Seila Law LLC v. Consumer Fin. Prot. Bureau,*
591 U.S. 197 (2020)...................................................................11

*Stern v. Marshall,*
564 U.S. 462 (2011)..........................................................8, 10, 12

*Texas v. Rettig,*
993 F.3d 408 (5th Cir. 2021) ....................................................24

*United States v. Arthrex, Inc.,*
594 U.S. 1 (2021)........................................................................22

*United States v. Ferreira,*
54 U.S. 40 (1851).......................................................................17

*United States v. H. M. Prince Textiles, Inc.,*
262 F. Supp. 383 (S.D.N.Y. 1966) .......................................15

*Utica Packing Co. v. Block,*
781 F.2d 71 (6th Cir. 1986) .............................................21, 22

*Wellness Int'l Network, Ltd. v. Sharif,*
575 U.S. 665 (2015).................................................................8, 9

*Williams v. Pennsylvania,*
579 U.S. 1 (2016).......................................................................19

*Withrow v. Larkin,*
421 U.S. 35 (1975).....................................................................19

**Constitution**

U.S. Const. art. III, § 1 ..........................................................9, 12

U.S. Const. art. III, § 2, cl. 1 ................................................9, 15

U.S. Const. art. III, § 2, cl. 2 ....................................................12

**Statutes**

15 U.S.C. § 45(c) ........................................................................13

vi

15 U.S.C. § 45(l) ..................................................................................16

15 U.S.C. § 57b(a)(2) ...........................................................................16

15 U.S.C. § 57b(b) ................................................................................16

**Regulations**

16 C.F.R. § 3.22(a) ...............................................................................13

16 C.F.R. § 3.54 ....................................................................................13

**Federal Register**

29 Fed. Reg. 8,324 (July 2, 1964) ..........................................................6

74 Fed. Reg. 1,804 (Jan. 13, 2009) ......................................................13

88 Fed. Reg. 42,872 (July 5, 2023) ......................................................13

**Other Authorities**

*Amrep Corp.*,
    102 F.T.C. 1362 (1983) ..................................................................18

Daniel Crane,
    *Debunking Humphrey's Executor*,
    83 Geo. Wash. L. Rev. 1835 (2015) ..............................................11

Edward A. Adler,
    *Monopolizing at Common Law and Under Section Two of the Sherman Act*,
    31 Harv. L. Rev. 246 (1917) .............................................................7

Evan D. Bernick,
    *Is Judicial Deference to Agency Fact-Finding Unlawful?*,
    16 Geo. J.L. & Pub. Pol'y 27 (2018) ....................................9, 12, 14

Federalist No. 78 (Hamilton) ................................................................10

Gary Lawson,
    *The Rise and Rise of the Administrative State*,
    107 Harv. L. Rev. 1231 (1994) ......................................................15

Appellate Case: 25-1383    Page: 8    Date Filed: 04/23/2025 Entry ID: 5509664

Jennifer Mascott,
*Constitutionally Conforming Agency Adjudication*,
2 Loyola U. Chi. J. Reg. Compliance 22 (2017) ................................14

Joshua D. Wright, Comm'r, FTC, Section 5 Revisited (Feb. 26, 2015),
http://bit.ly/2c3FSYZJ ................................................................18

Kent Barnett,
*Resolving the ALJ Quandary*,
66 Vand. L. Rev. 797 (2013) ........................................................21

Letter from Sarah Harris, Acting Solicitor Gen., Office of the Solicitor
Gen., U.S. Dep't of Justice, to the Honorable Mike Johnson,
Speaker, U.S. House of Representatives (Feb. 20, 2025),
https://perma.cc/9CBU-HTX4 ........................................................20

Letter from Sarah Harris, Acting Solicitor Gen., Office of the Solicitor
Gen., U.S. Dep't of Justice, to the Honorable Mike Johnson,
Speaker, U.S. House of Representatives (Feb. 12, 2025),
https://perma.cc/ACR7-FDAF ........................................................20

Linda D. Jellum, *"You're Fired!": Why the ALJ MultiTrack Dual
Removal Provisions Violate the Constitution and Possible Fixes*,
26 Geo. Mason L. Rev. 705 (2019) ................................................21

*McWane, Inc.*,
F.T.C. No. 9351, 2014 FTC LEXIS 28 (Jan. 30, 2014) ....................13

Michael W. McConnell,
*Contract Rights and Property Rights: A Case Study in the
Relationship Between Individual Liberties and Constitutional
Structure*,
76 Calif. L. Rev. 267 (1988) ..........................................................5

Mila Sohoni,
*Agency Adjudication and Judicial Nondelegation: An Article III
Canon*,
107 Nw. U.L. Rev. 1569 (2013) ................................................24, 25

1 Montesquieu, Spirit of Laws ........................................................10

viii

Nathan S. Chapman & Michael W. McConnell,
    *Due Process as Separation of Powers*,
    121 Yale L.J. 1672 (2012) ............................................................19, 20

Philip Hamburger,
    Is Administrative Law Unlawful? (2014)......................................13, 20

Statement of Chairman Andrew N. Ferguson (March 18, 2025),
    https://www.ftc.gov/system/files/ftc_gov/pdf/chairman-ferguson-
    statement.pdf........................................................................................21

William Blackstone, Commentaries on the Laws of England............................5, 6

William F. Letwin,
    *The English Common Law Concerning Monopolies*,
    21 U. Chi. L. Rev. 355 (1954) ...........................................................7

Appellate Case: 25-1383   Page: 10   Date Filed: 04/23/2025 Entry ID: 5509664

# INTEREST OF *AMICUS CURIAE*[1]

*Amicus curiae* Americans for Prosperity Foundation ("AFPF") is a 501(c)(3) nonprofit organization committed to educating and training Americans to be courageous advocates for the ideas, principles, and policies of a free and open society. Some of those key ideas include the separation of powers and constitutionally limited government. As part of this mission, AFPF appears as *amicus curiae* before state and federal courts.

AFPF has a particular interest in this case because it believes the Federal Trade Commission's ("FTC") structure offends the Constitution on many levels. The statutory for-cause removal protections for the FTC's Commissioners and ALJs violate Article II. Worse, the FTC's administrative process—in which the FTC acts as investigator, prosecutor, and judge of its own cause—offends due process and Article III. AFPF believes this arrangement cannot be allowed to stand and the FTC's extralegal administrative prosecution is void and must be enjoined.

---

[1] All parties have consented to the filing of this brief. Pursuant to FRAP 29(a)(4)(E), *amicus curiae* states that no counsel for a party other than AFPF authored this brief in whole or in part, and no counsel or party other than AFPF made a monetary contribution intended to fund the preparation or submission of this brief. No person other than *amicus curiae* or its counsel made a monetary contribution to its preparation or submission.

Appellate Case: 25-1383    Page: 11    Date Filed: 04/23/2025 Entry ID: 5509664

## SUMMARY OF ARGUMENT

The FTC is an exemplar of much of the unconstitutionality that is rampant within the administrative state. This body wields vast legislative, executive, and judicial power, posing a grave threat to core private rights and individual liberty. As relevant here, it brings inhouse prosecutions where it acts as investigator, prosecutor, and judge of its own cause. The FTC also gets to make the rules for this slanted administrative process, further rigging the game in its own favor. Unsurprisingly, the Commission invariably finds in favor of itself, imposing liability in 100 percent of its inhouse cases over the past quarter century. This arrangement makes a mockery of the Constitution.

The FTC's administrative prosecution of Appellants offends the Constitution's demands for at least three reasons.

*First*, the FTC seeks to unilaterally deprive Appellants of their private rights and invalidate thousands of their contracts with private parties outside of the constitutionally required process. In "all Cases, in Law and Equity, arising under" federal law, Article III of the Constitution exclusively vests the "judicial Power" to adjudicate disputes involving private rights in independent federal judges. No other branch may wield or possess the "judicial Power." That includes the power to find facts, say what the law is, and impose equitable remedies. But here, the Commissioners—the heads of an Article II law enforcement agency that is

2

prosecuting Appellants—seek to do just that by, in essence, filling the role of a federal district court. For that matter, their factual findings will, when reviewed by a U.S. Court of Appeals, receive deference akin to that reserved for jury verdicts. That is unconstitutional. The Commissioners are Executive Branch officials who cannot wield or possess these judicial Powers. And this "appellate review" model of administrative adjudication, as applied to private rights like those at issue here, violates Article III.

*Second*, the FTC's in-house court—where the FTC brings administrative charges, prosecutes the case before itself, and then invariably imposes liability—violates due process, as underscored by the agency's unblemished win rate before itself over the past decades, particularly when juxtaposed with the FTC's mixed track record in Article III court. Basic due process requires a fair, neutral forum and an impartial decisionmaker. This means that if the FTC wants to prosecute Appellants, it must do so before an independent judge in an Article III court, subject to the procedural protections of the Federal Rules of Evidence and Civil Procedure.

*Third*, although beyond the scope of this brief, as Appellants explain and even the government now agrees, the for-cause removal protections for FTC Commissioners and the multi-tier removal protections for FTC ALJs violate Article II. The Constitution authorizes three branches of government—legislative, judicial, and executive. This means that under the Constitution, there can be no Fourth

3

Branch, headless or otherwise. The statutory for-cause removal restrictions at issue here unconstitutionally shield these powerful executive officials from accountability to the democratically elected President and, by extension, to the source of his power: the American People.

This cannot be allowed to stand. And Appellants are entitled to a meaningful remedy for the government's separation-of-powers violations that will afford them complete redress. Because the Commissioners purport to wield Article III judicial power here to deprive Appellants of their private rights, they are mere usurpers in an unlawful office and therefore this enforcement action is void ab initio and must be enjoined.

## ARGUMENT

### I. The FTC's Administrative Prosecution Violates Article III and Is Therefore Void Ab Initio.

#### A. The FTC's Administrative Prosecution Implicates Private Rights.

In analyzing whether the FTC's inhouse administrative prosecution complies with the Constitution, a threshold inquiry is whether it implicates Appellants' private (as opposed to public) rights. This inquiry is paramount because whether the FTC's inhouse court complies with Article III turns on the nature of the rights at issue in those proceedings. The Constitution permits disputes about public rights and governmental privileges to be resolved outside of the courts, including by the Executive Branch, at least in the first instance. By contrast, matters involving private

4

rights fall outside of the constitutional jurisdiction of Executive Branch administrative tribunals and belong instead in federal court.

Here, Appellants' bargained-for contractual agreements with private parties are vested private rights. Core private rights include "life, liberty, and property[.]" *Axon Enter. v. FTC*, 598 U.S. 175, 198 (2023) (Thomas, J., concurring). And "contracts are property[.]" *Lynch v. United States*, 292 U.S. 571, 579 (1934). Thus, "contract rights . . . are the very paradigm of private rights."[2] *Career Colls. & Sch. of Tex. v. United States Dep't of Educ.*, 98 F.4th 220, 248 (5th Cir. 2024), *cert. granted*, No. 24-413 (U.S. Jan. 10, 2025).

The FTC's administrative prosecution plainly threatens Appellants' property rights and economic liberty. The FTC seeks to impose an Order invalidating Appellants' contracts and prospectively barring similar contracts. *See* Complaint, Notice of Contemplated Relief, ¶¶ 1–3, *In re Caremark Rx, LLC*, No. 9437 (F.T.C. Sept. 20, 2024) ("FTC Complaint"). That relief would inflict substantial monetary harm on not only Appellants but other private parties that voluntarily entered into

---

[2] Founding-era evidence supports this conclusion. For example, "Blackstone, the Framers' leading authority on the common law, treats contract as 'property in *action*.'" Michael W. McConnell, *Contract Rights and Property Rights: A Case Study in the Relationship Between Individual Liberties and Constitutional Structure*, 76 Calif. L. Rev. 267, 274 (1988) (quoting 2 W. Blackstone, Commentaries *440). For Blackstone, contract rights "are subsumed in the larger concept of property. Blackstone's definition of property is compendious enough to comprise contract rights as well as more tangible forms of property." *Id.*

those contracts, also upsetting their legitimate reliance interests. That well describes core private rights. *Cf. Axon*, 598 U.S. at 204 (Thomas, J., concurring) (FTC's attempt to force business "to transfer intellectual property" implicates "the core private right to property").

Supporting this conclusion, the FTC's administrative complaint brings what are, in essence, classic common-law claims about allegedly unfair private transactions. *See* 3 Blackstone, Commentaries *164 ("If any one cheats me with false cars or dice, or by false weights and measures, or by selling me one commodity for another, an action on the case also lies against him for damages, upon the contract which the law always implies, that every transaction is fair and honest."); *see also A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 531 (1935) (acknowledging "unfair competition" was "known to the common law"); 29 Fed. Reg. 8,324, 8,355 (July 2, 1964) (FTC considers "common law" in Section 5 "unfairness" inquiry).

Here, Appellants stand accused of committing "unfair method[s] of competition" and "unfair act[s] or practice[s]" in contracting with other private parties.[3] *See, e.g.*, FTC Complaint ¶¶ 261, 267, 274. And at its core, FTC's inhouse prosecution of Appellants revolves around allegations that their practices unlawfully

---

[3] As Appellants explain, the merits or lack thereof of the FTC's administrative charges are not at issue here. *See* Appellants' Br. 1.

6

"inflated prices." *See, e.g., id.* ¶¶ 6, 162, 234, 236, 237; *see* Gov't Resp. to Mot. for Injunction Pending Appeal, Doc. 5495598, at 4 (FTC "administrative complaint alleges that plaintiffs are engaging in unfair acts or practices and unfair methods of competition that inflate the price"). That well describes a type of claim that existed at common law. *See* 4 Blackstone, Commentaries *158-59 (discussing common-law prohibition against "persuading [persons] to enhance the price"); William F. Letwin, *The English Common Law Concerning Monopolies*, 21 U. Chi. L. Rev. 355, 367 (1954) (In "early monopoly cases the complaint is made that practices are objectionable because they tend to raise prices."); *see id.* at 368 ("'Forestalling' in the common law before the thirteenth century is said to have been an inclusive term for all unlawful attempts to raise prices.").[4]

The gravamen of the FTC's administrative charges is thus "made of the stuff of the traditional actions at common law tried by the courts at Westminster in 1789." *SEC v. Jarkesy,* 603 U.S. 109, 128 (2024) (cleaned up). And given the "close nature" of the FTC's allegations and the common law, this holds true regardless of the extent to which the concept of "unfair" competition and business practices was "narrower" or "broader" at common law than in Section 5. *See id.* at 126.

---

[4] According to Blackstone, "forestalling the market" was "an offence at common law[.]" 4 Blackstone, Commentaries *158. And "the [English] courts continued to punish engrossing, forestalling, and regrating under the common law" until the mid-nineteenth century. Edward A. Adler, *Monopolizing at Common Law and Under Section Two of the Sherman Act*, 31 Harv. L. Rev. 246, 258 (1917).

"There must be *some* limit to the government's ability to dissolve the Constitution's usual separation-of-powers and due-process protections by waving a nebulous 'public rights' flag at a court." *Calcutt v. FDIC*, 37 F.4th 293, 349 (6th Cir. 2022) (Murphy, J., dissenting), *rev'd*, 598 U.S. 623 (2023). The FTC's administrative prosecution exceeds that limit.[5] *Cf. Axon*, 598 U.S. at 203 (Thomas, J., concurring) ("The rights at issue in these cases appear to be core private rights that must be adjudicated by Article III courts."). Appellants are therefore entitled to the process the Constitution requires when private rights are at issue.

## B. The Constitution Exclusively Vests the Judicial Power To Find Facts and Independently Interpret the Law in Article III Courts.

The Supreme Court "ha[s] repeatedly explained that matters concerning private rights may not be removed from Article III courts." *Jarkesy*, 603 U.S. at 127 (citing *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. 272, 284 (1855); *Granfinanciera v. Nordberg*, 492 U.S. 33, 51–52 (1989); *Stern v. Marshall*, 564 U.S. 462, 484 (2011)). Instead, "an exercise of the judicial power is required when the government wants to act authoritatively upon core private rights that had vested in a particular individual." *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S.

---

[5] "[T]he presence of the United States as a proper party to the proceeding is a necessary but not sufficient means of distinguishing 'private rights' from 'public rights.'" *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 69 n.23 (1982). "[W]hat matters is the substance of the suit, not where it is brought, who brings it, or how it is labeled." *Jarkesy*, 603 U.S. at 135.

8

665, 713 (2015) (Thomas, J., dissenting) (cleaned up); *see Axon*, 598 U.S. at 198 (Thomas, J., concurring) ("[W]hen private rights are at stake, full Article III adjudication is likely required.").

"Article III of the Constitution begins with a clause that vests [this] particular kind of power in a specialized branch of the federal government." Evan D. Bernick, *Is Judicial Deference to Agency Fact-Finding Unlawful?*, 16 Geo. J.L. & Pub. Pol'y 27, 43 (2018). The Judicial Vesting Clause exclusively vests the "judicial Power of the United States" in Article III courts. U.S. Const. Art. III, § 1; *see Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 584 U.S. 325, 348 (2018) (Gorsuch, J., dissenting) ("the federal 'judicial Power' is vested in independent judges"); *CFTC v. Schor*, 478 U.S. 833, 867 (1986) (Brennan, J., dissenting) ("Our Constitution unambiguously enunciates a fundamental principle—that the 'judicial Power of the United States' be reposed in an independent Judiciary."). Under the Constitution, "[t]he judicial Power" "extend[s] to all Cases, in Law and Equity, arising under this Constitution, [and] the Laws of the United States[.]" U.S. Const. Art. III, § 2, cl. 1. "As originally understood, the judicial power extended to 'suit[s] at the common law, or in equity, or admiralty.'" *Oil States*, 584 U.S. at 348 (Gorsuch, J., dissenting) (quoting *Murray's Lessee*, 59 U.S. at 284).

This sovereign function cannot be delegated. *See* Bernick, 16 Geo. J.L. & Pub. Pol'y at 43–46. "The allocation of powers in the Constitution is absolute[.]" *Dep't*

9

*of Transp. v. Ass'n of Am. R.R.*, 575 U.S. 43, 69 (2015) (Thomas, J., concurring in judgment). This means that "the 'judicial power' belongs to Article III courts and cannot be shared with the Legislature or the Executive." *B&B Hardware, Inc. v. Hargis Indus.*, 575 U.S. 138, 171 (2015) (Thomas, J., dissenting) (citing *Stern*, 564 U.S. at 482–83). It "can no more be shared with another branch than the Chief Executive, for example, can share with the Judiciary the veto power, or the Congress share with the Judiciary the power to override a Presidential veto." *Stern*, 564 U.S. at 483 (cleaned up). Indeed, "Article III could neither serve its purpose in the system of checks and balances nor preserve the integrity of judicial decisionmaking if the other branches of the Federal Government could confer the Government's 'judicial Power' on entities outside Article III."[6] *Id.* at 484.

### C. The FTC Cannot Possess or Exercise Article III Judicial Power.

"Administrative agencies" like the FTC "have been called quasi-legislative, quasi-executive or quasi-judicial, as the occasion required, in order to validate their functions within the separation-of-powers scheme of the Constitution." *FTC v. Ruberoid Co.*, 343 U.S. 470, 487 (1952) (Jackson, J., dissenting). But merely labeling their function as "adjudicative" cannot change that *all* "federal

---

[6] The Framers understood that keeping the judiciary "truly distinct from both the legislature and the Executive" was important to protecting the "general liberty of the people." Federalist No. 78 (Hamilton). As the Framers recognized, "'there is no liberty, if the power of judging be not separated from the legislative and executive powers.'" *Id.* (quoting 1 Montesquieu, Spirit of Laws 181).

10

administrative agencies are part of the Executive Branch[.]" *B&B Hardware*, 575 U.S. at 171 (Thomas, J., dissenting). For the Constitution does not authorize administrative bodies "that straddle multiple branches of Government." *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 247 (2020) (Thomas, J., concurring in part, dissenting in part). Nor does it countenance executive officials exercising "quasi-judicial" or "quasi-legislative" powers. *See id.* The idea of "quasi" powers and "quasi" agencies is simply fiction and has long been repudiated by the Supreme Court. *See Morrison v. Olson*, 487 U.S. 654, 689–91 & nn. 28, 30 (1988); *id.* at 725 (Scalia, J., dissenting).

In other words, "[e]ven when an executive agency acts like a legislative or judicial actor, it still exercises executive power." *Garcia v. Garland*, 64 F.4th 62, 70 n.7 (2d Cir. 2023). Indeed, "under our constitutional structure" *all* of the FTC's activities "*must be* exercises of" Article II executive power. *City of Arlington v. FCC*, 569 U.S. 290, 304 n.4 (2013); *see also Seila Law*, 591 U.S. at 216 n.2 ("The Court's conclusion" in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), "that the FTC did not exercise executive power has not withstood the test of time."); *Bowsher v. Synar,* 478 U.S. 714, 761 n.3 (1986) (White, J., dissenting); Daniel Crane, *Debunking Humphrey's Executor,* 83 Geo. Wash. L. Rev. 1835, 1839, 1870–71 (2015). The FTC Commissioners and ALJs are thus executive officials housed within an Article II agency, who therefore cannot possess or exercise Article III

11

judicial power, or for that matter Article I legislative power. U.S. Const. Art. III, § 1; *see Stern*, 564 U.S. at 482–84; *see also B&B Hardware*, 575 U.S. at 171 (Thomas, J., dissenting) ("Because federal administrative agencies are part of the Executive Branch, it is not clear that they have power to adjudicate claims involving core private rights.").

"[F]actfinding" and "deciding questions of law" "are at the core of judicial power, as Article III itself acknowledges." *Axon,* 598 U.S. at 203 (Thomas, J., concurring) (citing U.S. Const. Art. III, § 2, cl. 2)); *see also* Bernick, 16 Geo. J.L. & Pub. Pol'y at 46 ("The determination of facts, no less than the interpretation of law, is part and parcel of the exercise of judicial power."). Accordingly, a proper understanding of the Constitution would prohibit the FTC from making factual findings, deciding questions of law, and issuing de facto injunctions in disputes implicating core private rights. But that is exactly what the FTC's administrative prosecution scheme allows it to do.

The FTC "houses (and by design) both prosecutorial and adjudicative activities," *Axon*, 598 U.S. at 189, "combin[ing] the functions of investigator, prosecutor, and judge under one roof," *id.* at 215 (Gorsuch, J., concurring in judgment). "The agency effectively fills in for the district court, with the court of

12

appeals providing judicial review."[7] *Id.* at 185 (majority opinion). Further still, the Commission's factual findings are subject to great deference: "The findings of the Commission as to the facts, if supported by evidence, shall be conclusive."[8] 15 U.S.C. § 45(c). "This deferential review" has been described as "no more searching than if [an appellate court] were evaluating a jury's verdict." *Impax Labs., Inc. v. FTC*, 994 F.3d 484, 492 (5th Cir. 2021).

This arrangement violates the separation of powers and Article III. *See* Philip Hamburger, Is Administrative Law Unlawful?, 319 (2014). As Justice Thomas has suggested, the FTC's administrative process "may violate the separation of powers by placing adjudicatory authority over core private rights—a judicial rather than executive power—within the authority of Article II agencies" and "violate Article III by compelling the Judiciary to defer to administrative agencies regarding matters

---

[7] Procedurally, these forums differ in who presides and makes legal determinations, what evidentiary and discovery rules apply, and who finds facts." *Jarkesy*, 603 U.S. at 117. Unlike the FTC's inhouse court, in federal court "a life-tenured, salary-protected Article III judge presides and the litigation is governed by the Federal Rules of Evidence and the ordinary rules of discovery." *Id.* (citation omitted).

[8] The Commission reviews the ALJ's factual findings and "inferences drawn from those facts" *de novo*. *See McWane, Inc*., F.T.C. No. 9351, 2014 FTC LEXIS 28, at *30 (Jan. 30, 2014); 16 C.F.R. § 3.54. In 2009, the FTC amended its Rules of Practice to grab powers that had been previously exercised by the ALJ. 74 Fed. Reg. 1,804, 1,808–11 (Jan. 13, 2009). Under these changes, the same Commission that votes out the Complaint (not the ALJ) decides dispositive motions, *see* 16 C.F.R. § 3.22(a), and has greater case-management authority. In July 2023, the Commission again amended its Rules of Practice to transfer even more ALJ powers to itself. *See* 88 Fed. Reg. 42,872, 42,873–74 (July 5, 2023).

Appellate Case: 25-1383     Page: 23     Date Filed: 04/23/2025 Entry ID: 5509664

within the core of the Judicial Vesting Clause." *Axon*, 598 U.S. at 202 (Thomas, J., concurring). *Cf. Lorenzo v. SEC*, 872 F.3d 578, 602 (D.C. Cir. 2017) (Kavanaugh, J., dissenting) ("[A]gency-centric process is in some tension with Article III of the Constitution[.]"); *Calcutt*, 37 F.4th at 336 (Murphy, J., dissenting) ("[O]ne might wonder whether the agency exercises judicial power by adjudicating cases that deprive individuals of private rights."). Exactly so.

"Requiring judges in core-private-rights cases to defer to facts found by administrative agencies effectively divests the courts of a key component of judicial power—and therefore violates Article III." Bernick, 16 Geo. J.L. & Pub. Pol'y at 46. "It is no answer that an Article III court may eventually review the agency order and its factual findings under a deferential standard of review." *Axon*, 598 U.S. at 202–03 (Thomas, J., concurring). "[W]hen agency adjudicators stray outside the proper limits of executive adjudication, such as by depriving individuals of vested property rights, they must not serve even as fact-finders subject to judicial deference. All cases and controversies subject to the federal judicial power—or parts of those cases and controversies—must be evaluated and determined by Article III judges[.]" Jennifer Mascott, *Constitutionally Conforming Agency Adjudication*, 2 Loyola U. Chi. J. Reg. Compliance 22, 25 (2017) (footnotes omitted). "Article III requires de novo review, of both fact and law, of all agency adjudication that is properly

14

classified as 'judicial' activity." Gary Lawson, *The Rise and Rise of the Administrative State*, 107 Harv. L. Rev. 1231, 1248 (1994).

Imposition of the relief the FTC is seeking to unilaterally grant itself likewise requires Article III judicial power. While styled as a cease-and-desist order it is in effect a de facto injunction.[9] *See Regal Knitwear Co. v. NLRB,* 324 U.S. 9, 14 (1945) (describing NLRB orders as "somewhat analogous to" an "injunction to restrain violation of" FLSA); *NLRB v. Wm. Tehel Bottling Co.*, 129 F.2d 250, 255 (8th Cir. 1942) ("[A] cease and desist order is of the nature of an injunction, and its affirmative provisions analogous to those of one that is mandatory."). An "injunction is inherently an equitable remedy[.]" *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 211 n.1 (2002). And the Constitution makes clear that in "all Cases, in . . . Equity, arising under" federal law only Article III courts may impose this remedy. U.S. Const. Art. III, § 2, cl. 1; *see Ortiz v. United States*, 585 U.S. 427, 455 (2018) (Thomas, J., concurring) ("The judicial power includes the power to resolve the specific types of 'Cases' and 'Controversies' listed in §2.").

---

[9] It is of no moment that enforcement of its terms requires Article III involvement given the federal court's rubber-stamp role. After an FTC order becomes final, "[a]ll that the government need prove is that a cease-and-desist order has in fact been violated[.]" *United States v. H.M. Prince Textiles, Inc.*, 262 F. Supp. 383, 388 (S.D.N.Y. 1966); *see FTC v. Morton Salt Co.*, 334 U.S. 37, 54 (1948) ("The enforcement responsibility of the courts . . . is to adjudicate questions concerning the order's violation, not questions of fact which support that valid order."). That is not even a speedbump.

15

On top of this, FTC orders are backed by civil penalties.[10] 15 U.S.C. § 45(l). That is "a form of monetary relief" and "'a type of remedy at common law that could only be enforced in courts of law.'" *Jarkesy*, 603 U.S. at 123 (citation omitted).

### D. The Commissioners Are Usurpers In An Unlawful Office Whose Inhouse Enforcement Actions Are Void Ab Initio.

Because Congress has assigned the FTC "judicial Power"—a sovereign function it cannot possess—the FTC's administrative tribunal cannot constitutionally exist, and its Commissioners are mere usurpers, whose inhouse enforcement actions are void ab initio. *Cf. Hildreth's Heirs v. M'Intire's Devisee*, 24 Ky. 206, 208 (Ky. 1829) ("The offices attempted to be created, never had a constitutional existence; and those who claimed to hold them, had no rightful or legal power."). *See generally Calcutt*, 37 F.4th at 344–45 (Murphy, J., dissenting) (surveying case law). As the Supreme Court explained long ago: "Where no office legally exists, the pretended officer is merely a usurper, to whose acts no validity can be attached[.]"[11] *Norton v. Shelby Cnty.*, 118 U.S. 425, 449 (1886). "The

---

[10] Under certain circumstances, FTC cease-and-desist orders also allow FTC to obtain "monetary damages" through its inhouse process. *See Illumina, Inc. v. FTC*, 88 F.4th 1036, 1046 (5th Cir. 2023) ("[T]o obtain other forms of relief, such as monetary damages, the FTC must resort to administrative proceedings under Section 5(b)." (citing *AMG Cap. Mgmt., LLC v. FTC*, 593 U.S. 67, 75–78 (2021)); 15 U.S.C. §§ 57b(a)(2), (b).

[11] "This rule extended to constitutional defects. The Supreme Court may have followed it as early as *United States v. Yale Todd* (U.S. 1794)." *Calcutt*, 37 F.4th at

16

Supreme Court's modern cases also treat an officer's actions as void if the generic office could 'not lawfully possess' the power to take them." *Calcutt*, 37 F.4th at 344 (Murphy, J., dissenting) (citing *Collins v. Yellen*, 594 U.S. 220, 258 (2021)).

In sum, "when administrative agencies adjudicate private rights," as the FTC is doing here, "they are unconstitutionally exercising '[t]he judicial Power of the United States,' as agencies are not Article III courts and do not 'enjoy a unique, textually based' carve-out from the Vesting Clause of Article III." *Ortiz*, 585 U.S. at 462–63 (Thomas, J., concurring) (citation omitted). *Cf. Jarkesy*, 603 U.S. at 131 (public rights exception "has no textual basis in the Constitution and must therefore derive instead from background legal principles"). Here, the Commission cannot, under the Constitution, lawfully possess the "judicial Power" the Commissioners seek to exercise in this case. Therefore, the Commission's actions are void ab initio.

## II. The FTC's Administrative Prosecution Violates Due Process.

The FTC's administrative prosecution cannot stand for a second reason: it violates Appellants' due process rights. *See* Appellants' Br. 42–44.

### A. The FTC's Administrative Process Is Rigged Against Respondents.

To put Appellants' due process claims into context, it is important to understand the degree to which the FTC's administrative process stacks the deck

---

344 (Murphy, J., dissenting) (citing *United States v. Ferreira*, 54 U.S. 40, 52–53 (1851) (note by Taney, C.J.)).

Appellate Case: 25-1383     Page: 27     Date Filed: 04/23/2025 Entry ID: 5509664

against respondents. After all, the FTC "combines the functions of investigator, prosecutor, and judge under one roof." *Axon*, 598 U.S. at 215 (Gorsuch, J., concurring in judgment). It "employ[s] relaxed rules of procedure and evidence— rules they make for themselves."[12] *Id.* (Gorsuch, J., concurring in judgment). And, unsurprisingly, the FTC invariably finds in favor of itself.

"The numbers reveal just how tilted this game is. . . . [S]ome say the FTC has not lost an in-house proceeding in 25 years." *Axon*, 598 U.S. at 215 (Gorsuch, J., concurring in judgment); *see Axon Enter. v. FTC*, 986 F.3d 1173, 1187 (9th Cir. 2021), *rev'd*, 598 U.S. 175 (2023) ("FTC does not appear to dispute[] that [it] has not lost a single case in the past quarter-century."); *see also* Joshua D. Wright, Comm'r, FTC, *Section 5 Revisited* 6–7 (Feb. 26, 2015), http://bit.ly/2c3FSYZ. "Even the 1972 Miami Dolphins would envy that type of record." *Axon,* 986 F.3d at 1187. This "raises legitimate questions about whether the FTC has stacked the deck in its favor in its administrative proceedings." *Id.* It has.[13]

---

[12] Nor do FTC's Rules even obligate Complaint Counsel to provide exculpatory evidence to Respondents. This is because FTC, unlike other agencies, has resisted incorporating the *Brady* rule into its administrative adjudication scheme. *See, e.g., Amrep Corp*., 102 F.T.C. 1362, 1371 (1983).

[13] Respondents are aware of this, which allows the FTC to leverage its home turf advantage to coerce companies into entering into draconian and unfair settlements. *See generally Axon*, 598 U.S. at 216 & n.4 (Gorsuch, J., concurring in judgment).

18

### B. The FTC's Combination of Investigative, Prosecutorial, and Judicial Functions Violates Due Process.

This arrangement is unconstitutional. "[A] 'fair trial in a fair tribunal is a basic requirement of due process.' This applies to administrative agencies which adjudicate as well as to courts." *Withrow v. Larkin*, 421 U.S. 35, 46 (1975) (quoting *In re Murchison*, 349 U.S. 133, 136 (1955)). Due process demands that the FTC may not act as investigator, prosecutor, and judge of its own cause. *See Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016) ("[A]n unconstitutional potential for bias exists when the same person serves as both accuser and adjudicator in a case."). *Cf. FTC v. Facebook, Inc.*, 581 F. Supp. 3d 34, 63 (D.D.C. 2022) ("So what role does provide the best analogy for analyzing Chair Khan's actions in voting to file this case? The Court concludes it is that of a prosecutor."). "In this country, judges have no more power to initiate a prosecution of those who come before them than prosecutors have to sit in judgment of those they charge." *Donziger v. United States*, 143 S. Ct. 868, 870 (2023) (Gorsuch, J., dissenting from denial of certiorari).

More broadly, as Professors Nathan Chapman and Michael McConnell have explained:

> The basic idea of due process . . . at the Founding . . . was that the law of the land required each branch of government to operate in a distinctive manner, at least when the effect was to deprive a person of liberty or property. . . . The judiciary was required to adjudicate cases in accordance with longstanding procedures, unless the legislature substituted alternative procedures of equivalent fairness.

19

*Due Process as Separation of Powers*, 121 Yale L.J. 1672, 1781–82 (2012). Due process "was about securing the rule of law. It ensured that the executive would not be able unilaterally to deprive persons within the nation of their rights of life, liberty, or property except as provided by common law or statute and as adjudicated by independent judicial bodies[.]"[14] *Id.* at 1808. That cannot happen here. *Cf. Jarkesy*, 603 U.S. at 149–51 (Gorsuch, J., concurring).

Moreover, the Department of Justice ("DOJ") has concluded the for-cause removal protections for the Commissioners and ALJs are unconstitutional. *See* Add. 12; App. 317; R. Doc. 57 at 1 (Notice of Change of Position); Letter from Sarah Harris, Acting Solicitor Gen., U.S. Dep't of Justice, to the Hon. Mike Johnson, Speaker, U.S. House of Representatives (Feb. 20, 2025), https://perma.cc/9CBU-HTX4; Letter from Sarah Harris, Acting Solicitor Gen., U.S. Dep't of Justice, to the Hon. Mike Johnson, Speaker, U.S. House of Representatives (Feb. 12, 2025), https://perma.cc/ACR7-FDAF. As the FTC acknowledges, DOJ's "conclusion that these removal restrictions are unconstitutional and unenforceable only underscores that the President will not treat them as obstacles to his exercise of control over the Executive Branch[.]" Gov't Resp. to Mot. for Injunction Pending Appeal, Doc.

---

[14] As Professor Philip Hamburger put it: "The guarantee of due process . . . bars the government from holding subjects to account outside courts and their processes. This was the history of the principle from the very beginnings, and this was how the Fifth Amendment was drafted in 1791." Hamburger, *supra*, 256.

20

5495598, at 4. Indeed, the President recently removed two FTC Commissioners. *See* Statement of Chairman Andrew N. Ferguson (March 18, 2025).[15]

The President's recognition of his at-will removal power may well cure the FTC's Article II problems.[16] *See Collins*, 594 U.S. at 259–60; *id.* at 267 (Thomas, J., concurring). But it makes the due process problem with FTC's inhouse court even worse. *See* Kent Barnett, *Resolving the ALJ Quandary*, 66 Vand. L. Rev. 797, 801 (2013) ("[I]ncreasing presidential control over ALJs would create impartiality concerns under the Due Process Clause."); Linda D. Jellum, *"You're Fired!": Why the ALJ MultiTrack Dual Removal Provisions Violate the Constitution and Possible Fixes*, 26 Geo. Mason L. Rev. 705, 710 (2019) (noting pre-APA concern hearing examiners "were not impartially presiding over agency hearings" and "acted as the arms of the agency."). After all, "the title 'judge' in this context is not quite what it might seem. . . . [ALJs] remain servants of the same master—the very agency tasked with prosecuting[.]" *Jarkesy*, 603 U.S. at 142 (Gorsuch, J., concurring). The same holds true for the Commissioners.

"There is no guarantee of fairness when the one who appoints a judge has the power to remove the judge before the end of proceedings for rendering a decision which displeases the appointer." *Utica Packing Co. v. Block*, 781 F.2d 71, 78 (6th

---

[15] https://www.ftc.gov/system/files/ftc_gov/pdf/chairman-ferguson-statement.pdf.

[16] *Amicus* agrees with Appellants that the for-cause removal protections for FTC Commissioners and ALJs are unconstitutional. *See* Appellants' Br. 19–33.

Cir. 1986). "All notions of judicial impartiality would be abandoned if such a procedure were permitted." *Id. Cf. Caperton v. A. T. Massey Coal Co*., 556 U.S. 868, 883 (2009) ("Just as no man is allowed to be a judge in his own cause, similar fears of bias can arise when . . . a man chooses the judge in his own cause."). So too here.

This should not be allowed to stand. "Any suggestion that the neutrality and independence the framers guaranteed for courts could be replicated within the Executive Branch was never more than wishful thinking." *United States v. Arthrex, Inc*., 594 U.S. 1, 36 (2021) (Gorsuch, J., concurring in part, dissenting in part). And the FTC's unblemished win rate in its inhouse court is Exhibit A as to why that is the case. If the FTC wants to prosecute Appellants to deprive them of private rights, Article III and due process require the FTC to do so in an Article III court. *See Axon*, 598 U.S. at 202 (Thomas, J., concurring) (FTC review scheme "may violate due process by empowering entities that are not courts of competent jurisdiction to deprive citizens of core private rights."). It is long past time to shutter FTC's unconstitutional courthouse's doors.

### III. Circuit Precedent Does Not Excuse FTC's Constitutional Violations.

Nor can *Arkansas Wholesale Grocers' Association v. FTC*, 18 F.2d 866 (8th Cir. 1927), or *Chamber of Commerce v. FTC*, 280 F. 45 (8th Cir. 1922), excuse the FTC's constitutional violations, as the district court mistakenly found, *see* Add. 18–20, 27–28; App. 327–329, 336–337; R. Doc. 59 at 5–7, 14–15. *Arkansas Wholesale*

did not pass judgment on whether the FTC's inhouse court comports with Article III's demands. *See* 18 F.2d at 871. That decision does not mention Article III, let alone discuss and analyze whether FTC's administrative tribunal runs afoul of it. *See id.* at 867–72. Its due process holding does not answer the precise constitutional question before this Court. *Compare id.* at 871, *with* Appellants' Br. 15, 41, 44–46. And the district court here acknowledged the possibility that "*Jarkesy* casts some doubt on *Arkansas Wholesale*'s continued viability." Add. 20; App. 329; R. Doc. 59 at 7. *Chamber of Commerce* likewise has *no* precedential effect because this Court did not reach the merits of petitioner's claims. Instead, this Court concluded that "[t]he petition must be dismissed for want of jurisdiction in this court to entertain it." *Chamber of Commerce*, 280 F. *id.* at 49. That decision's passing reference to "due process," *see id.* at 48, is stray dicta, nothing more.

This Court should reject any invitation to overread past precedent to shield the FTC's inhouse court from long overdue constitutional accountability. While this Court must faithfully follow precedents, it "should resolve questions about the scope of those precedents in light of and in the direction of the constitutional text and constitutional history." *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 537 F.3d 667, 698 (D.C. Cir. 2008) (Kavanaugh, J., dissenting), *overruled*, 561 U.S. 477 (2010). Here, that direction shows the FTC's slanted inhouse administrative process is unconstitutional.

Appellate Case: 25-1383    Page: 33    Date Filed: 04/23/2025 Entry ID: 5509664

While "a past decision may bind the parties to a dispute," it does not grant "authority in future cases to depart from what the Constitution" promises. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 423 (2024) (Gorsuch, J., concurring); *see Texas v. Rettig*, 993 F.3d 408, 417 (5th Cir. 2021) (Ho, J., dissenting from denial of rehearing en banc). To the contrary, "it is the province and duty of the judicial department to determine . . . whether the powers of any branch of the government . . . have been exercised in conformity to the Constitution; and if they have not, to treat their acts as null and void." *Kilbourn v. Thompson*, 103 U.S. 168, 199 (1880); *see Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 180 (1803) ("a law repugnant to the constitution is void"). So too here.

## IV. The Sky Will Not Fall If This Court Enforces the Constitution's Demands.

Finally, enforcing the Constitution's demands where, as here, *private* rights are at stake will not cause practical or floodgate problems. Agencies like the FTC and SEC already have authority to bring enforcement actions directly in federal court and have done so for years. *See AMG,* 593 U.S. at 72–74; *Jarkesy*, 603 U.S. at 116–18. And these executive agencies can continue to enforce the law—in federal court.

Conversely, matters involving garden variety *public* rights, such as claims involving government benefits and federal employment disputes, need not be addressed by Article III courts in the first instance. *See Jarkesy*, 603 U.S. at 128–30; *Axon*, 598 U.S. at 199 (Thomas, J., concurring). After all, as Professor Mila Sohoni

24

has explained, "a government denial of Social Security benefits or a termination of a government employee for cause would not" implicate private rights. *Agency Adjudication and Judicial Nondelegation: An Article III Canon*, 107 Nw. U.L. Rev. 1569, 1586 (2013); *see Austin v. Shalala*, 994 F.2d 1170, 1177 (5th Cir. 1993). Accordingly, these matters may be initially assigned to administrative forums.

In sum, the sky will not fall if the FTC and other law enforcement agencies are required to bring enforcement actions implicating private rights in federal court, as the Constitution requires them to do and as the DOJ does every day.

## CONCLUSION

For these reasons, this Court should reverse the district court.

Respectfully submitted,

/s/ Michael Pepson
Michael Pepson
AMERICANS FOR PROSPERITY FOUNDATION
4201 Wilson Blvd., Ste. 1000
Arlington, VA 22203
571.329.4529
mpepson@afphq.org

25

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of FRAP 29(a)(5) and FRAP 32(a)(7)(B) because it contains 6,238 words. This brief also complies with the typeface and type-style requirements of FRAP 32(a)(5)-(6) because it was prepared using Microsoft Word in Times New Roman 14-point font.

I further certify that this motion has been scanned for viruses and is virus-free.

/s/ Michael Pepson
Michael Pepson

Dated: April 23, 2025

26

## CERTIFICATE OF SERVICE

I hereby certify that on April 23, 2025, I electronically filed the above Brief of Amicus Curiae Americans for Prosperity Foundation in Support of Appellants and Reversal with the Clerk of the Court by using the appellate CM/ECF system. I further certify that service will be accomplished by the appellate CM/ECF system.


<u>/s/ Michael Pepson</u>
Michael Pepson

Dated: April 23, 2025