# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

EXPRESS SCRIPTS, INC.; EVERNORTH HEALTH, INC.; ASCENT HEALTH
SERVICES LLC; MEDCO HEALTH SERVICES, INC.; CAREMARK RX,
L.L.C.; ZINC HEALTH SERVICES, LLC; OPTUMRX, INC.; OPTUMRX
HOLDINGS, LLC; EMISAR PHARMA SERVICES LLC,

*Plaintiffs-Appellants*,

v.

FEDERAL TRADE COMMISSION; ANDREW N. FERGUSON *in his official
capacity as Commissioner and Chair of the United States Federal Trade
Commission*; REBECCA KELLY SLAUGHTER *in her official capacity as
Commissioner of the United States Federal Trade Commission*; ALVARO M.
BEDOYA *in his official capacity as Commissioner of the United States Federal
Trade Commission*; D. MICHAEL CHAPPELL *in his official capacity as Federal
Trade Commission Chief Administrative Law Judge*,

*Defendants-Appellees*.

On Appeal from the United States District Court for the Eastern District
of Missouri, No. 4:24-cv-01549-MTS, Honorable Matthew T. Schelp

## APPELLANTS' REPLY BRIEF

ENU MAINIGI
CRAIG D. SINGER
STEVEN M. PYSER
CHARLES L. MCCLOUD
PATRICK DEVER
CHRISTOPHER BALDACCI
WILLIAMS & CONNOLLY LLP
680 Maine Avenue S.W.
Washington, D.C. 20024
(202) 434-5000

*Counsel for Caremark Rx, L.L.C.
and Zinc Health Services, LLC*

DANIEL S. VOLCHOK
JENNIFER MILICI
PERRY A. LANGE
KEVIN M. LAMB
JOHN W. O'TOOLE
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Avenue N.W.
Washington, D.C. 20037
(202) 663-6000
daniel.volchok@wilmerhale.com

*Counsel for Express Scripts, Inc.;
Evernorth Health, Inc.; Ascent Health
Services LLC; and Medco Health
Services, Inc.*

June 9, 2025

Additional Counsel on Inside Cover

STEVEN A. ENGEL
MICHAEL COWIE
RANI HABASH
DECHERT LLP
1900 K Street N.W.
Washington, D.C.  20006
(202) 261-3481

*Counsel for Caremark Rx, L.L.C.
and Zinc Health Services, LLC*

MATTHEW S. ROZEN
GIBSON, DUNN & CRUTCHER LLP
1700 M Street N.W.
Washington, D.C.  20036
(202) 955-8500

THEODORE J. BOUTROUS JR.
SAMUEL LIVERSIDGE
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071
(213) 229-7420

*Counsel for OptumRx, Inc.;
OptumRx Holdings, LLC; and
Emisar Pharma Services LLC*

KYLE EDWARDS HAUGH
WILMER CUTLER PICKERING
    HALE AND DORR LLP
50 California Street, Suite 3600
San Francisco, CA  94111
(628) 235-1000

CHARLES F. RULE
DANIEL J. HOWLEY
DEREK W. MOORE
RULE GARZA HOWLEY LLP
901 Seventh Street N.W.
Suite 600
Washington, D.C.  20001
(202) 843-9280

*Counsel for Express Scripts, Inc.;
Evernorth Health, Inc.; Ascent Health
Services LLC; and Medco Health
Services, Inc.*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................... ii

INTRODUCTION ..................................................................................... 1

ARGUMENT ............................................................................................ 3

I.      PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS ................................... 3

      A.     Defendants Concede The Article II Violations, And Their Lack-Of-Harm Arguments Are Misplaced ........................................... 3

      B.     *Jarkesy* Forecloses Defendants' Attempts To Adjudicate Plaintiffs' Private Rights Outside Article III Courts ............................ 9

      C.     Defendants Ignore Plaintiffs' Actual Due-Process Claim ................. 18

II.    DEFENDANTS ABANDON THE DISTRICT COURT'S IRREPARABLE-HARM REASONING, AND THE ARGUMENTS THEY SUBSTITUTE ARE BASELESS ............................................................................................ 21

III.   DEFENDANTS' ARGUMENTS REGARDING THE BALANCE OF EQUITIES AND PUBLIC INTEREST ARE MERITLESS ......................................... 26

CONCLUSION ....................................................................................... 28

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

Appellate Case: 25-1383    Page: 3    Date Filed: 06/10/2025 Entry ID: 5525740

# TABLE OF AUTHORITIES

## CASES

Page(s)

*A.L.A. Schechter Poultry Corporation v. United States*, 295 U.S. 495 (1935) ................................................................................................17

*Alpine Securities Corporation v. FINRA*, 121 F.4th 1314 (D.C. Cir. 2024) ..........................................................................................22, 24, 25

*American Washboard Company v. Saginaw Manufacturing Company*, 103 F. 281 (6th Cir. 1900) ......................................................10, 11

*Arkansas Wholesale Grocers' Association v. FTC*, 18 F.2d 866 (8th Cir. 1927) ..............................................................................................16

*AT&T, Inc. v. FCC*, 135 F.4th 230 (5th Cir. 2025) ...........................11, 12

*Aunt Bertha v. NLRB*, 2024 WL 4202383 (N.D. Tex. Sept. 16, 2024) ...................6

*Axon Enterprises, Inc. v. FTC*, 598 U.S. 175 (2023)......................................*passim*

*Axon Enterprises, Inc. v. FTC*, 986 F.3d 1173 (9th Cir. 2021) ...............................18

*Bhatti v. Federal Housing Finance Agency*, 15 F.4th 848 (8th Cir. 2021) ...............................................................................................5

*Bhatti v. Federal Housing Finance Agency*, 97 F.4th 556 (8th Cir. 2024) ...............................................................................................5

*Birch v. Mazander*, 678 F.2d 754 (8th Cir. 1982) ...................................25

*Butler v. Pennsylvania*, 51 U.S. 402 (1850) ...........................................14

*Calcutt v. FDIC*, 37 F.4th 293 (6th Cir. 2022) .........................................7

*Carson v. Simon*, 978 F.3d 1051 (8th Cir. 2020)....................................26

*CFPB v. Law Offices of Crystal Moroney, P.C.*, 63 F.4th 174 (2d Cir. 2023) ...............................................................................................7

*CFPB v. National Collegiate Master Student Loan Trust*, 96 F.4th 599 (3d Cir. 2024)..............................................................................7

ii

*Chamber of Commerce of Minneapolis v. FTC*, 280 F. 45 (8th Cir. 1922) .........................................................................................20

*Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290 (D.C. Cir. 2006) .......................................................................................26

*Cigna Corporation v. Bricker*, 103 F.4th 1336 (8th Cir. 2024) .............................4

*Cochran v. SEC*, 20 F.4th 194 (5th Cir. 2021) ........................................5

*Collins v. Yellen*, 594 U.S. 220 (2021) ...........................................1, 4, 7

*Community Financial Services Association of America, Ltd. v. CFPB*, 51 F.4th 616 (5th Cir. 2022) ...........................................................6, 7

*Energy Transfer, LP v. NLRB*, 742 F.Supp.3d 755 (S.D. Tex. 2024) .................5, 6

*Ex parte Bakelite Corporation*, 279 U.S. 438 (1929)................................9

*FTC v. A. McLean & Son*, 84 F.2d 910 (7th Cir. 1936) .........................16

*FTC v. Balme*, 23 F.2d 615 (2d Cir. 1928) ..................................17

*FTC v. Beech-Nut Packing Company*, 257 U.S. 441 (1922) ...................18

*FTC v. R.F. Keppel & Brother, Inc.*, 291 U.S. 304 (1934)......................12

*FTC v. Standard Oil Company*, 449 U.S. 232 (1980) ..........................23

*FTC v. Winsted Hosiery Company*, 258 U.S. 483 (1922).......................17

*Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989).......................15

*Humphrey's Executor v. United States*, 295 U.S. 602 (1935) ...................1

*Jet Midwest International Company v. Jet Midwest Group, LLC*, 953 F.3d 1041 (8th Cir. 2020) .................................................22

*John Doe Company v. CFPB*, 849 F.3d 1129 (D.C. Cir. 2017) ..............22

*K&R Contractors, LLC v. Keene*, 86 F.4th 135 (4th Cir. 2023).................6

*Kaufmann v. Kijakazi*, 32 F.4th 843 (9th Cir. 2022) ..........................6

*Leachco, Inc. v. Consumer Product Safety Commission*, 103 F.4th 748 (10th Cir. 2024) ....................................................7, 25

*League of Women Voters v. Newby*, 838 F.3d 1 (D.C. Cir. 2016)..........................27

*Monsanto Company v. Geertson Seed Farms*, 561 U.S. 139 (2010).......................4

*Murray's Lessee v. Hoboken Land & Improvement Company*, 59 U.S. 272 (1855)....................................................................................13, 15

*National Harness Manufacturers Association v. FTC*, 268 F. 705 (6th Cir. 1920)........................................................................16, 20

*New York & Rosendale Cement Company v. Coplay Cement Company*, 44 F. 277 (C.C.E.D. Pa. 1890) ..............................................10, 11

*Oceanic Steam Navigation Company v. Stranahan*, 214 U.S. 320 (1909)........................................................................................15

*Perkins v. Astrue*, 648 F.3d 892 (8th Cir. 2011)........................................20

*Pieper v. United States*, 604 F.2d 1131 (8th Cir. 1979) ........................................25

*Planned Parenthood Minnesota v. Rounds*, 530 F.3d 724 (8th Cir. 2008) ........................................................................................26

*R.J. Reynolds Vapor Company v. FDA*, 65 F.4th 182 (5th Cir. 2023) ...................27

*Rodriguez v. SAA*, 118 F.4th 1302 (11th Cir. 2024) ...................................6

*Samuels, Kramer & Company v. Commissioner of Internal Revenue*, 930 F.2d 975 (2d Cir. 1991) ...................................................14, 15

*SEC v. Jarkesy*, 603 U.S. 109 (2024)...............................................*passim*

*Seila Law LLC v. CFPB*, 591 U.S. 197 (2020)..........................................6

*Singh v. Garland*, 20 F.4th 1049 (5th Cir. 2021)..........................................20

*Space Exploration Technologies Corporation v. NLRB*, 129 F.4th 906 (5th Cir. 2025) ........................................................................24

*Space Exploration Technologies Corporation v. NLRB*, 741 F.Supp.3d 630 (W.D. Tex. 2024)........................................................6

*Texas v. Cobb*, 532 U.S. 162 (2001) ........................................................17

Appellate Case: 25-1383    Page: 6    Date Filed: 06/10/2025 Entry ID: 5525740

*Thomas v. Union Carbide Agricultural Products Company*, 473 U.S. 568 (1985)..................................................................................................15

*Withrow v. Larkin*, 421 U.S. 35 (1975) .............................................2, 3, 18, 20

*YAPP USA Automobile Systems, Inc. v. NLRB*, 2024 WL 4489598 (6th Cir. Oct. 13, 2024)......................................................................7, 25

## DOCKETED CASES

*Axon Enterprise, Inc. v. FTC*, No. 21-86, 2022 WL 3327460 (U.S.).....................23

*Axon Enterprise, Inc. v. FTC*, No. 2:20-cv-14 (D. Ariz.)........................................21

*H&R Block, Inc. v. Himes*, No. 24-2626 (8th Cir.).................................................27

*Slaughter v. Trump*, No. 1:25-cv-909 (D.D.C.)........................................................8

*Trump v. Wilcox*, No. 24A966 (U.S.) .......................................................................9

## OTHER AUTHORITIES

3 Blackstone, *Commentaries* (1768).........................................................................13

Ohlhausen, Maureen K., *Administrative Litigation at the FTC*, 12 J. Competition L. & Econ. 623 (2016).............................................................19

Appellate Case: 25-1383    Page: 7    Date Filed: 06/10/2025 Entry ID: 5525740

## INTRODUCTION

The district court erred in failing to halt the ongoing Federal Trade Commission ("FTC") proceeding against plaintiffs. The proceeding violates Article II, Article III, and the Due Process Clause. And those violations irreparably harm plaintiffs, who face the prospect of lengthy litigation before a biased agency unconstitutionally insulated from public accountability. Defendants offer no persuasive response.

Indeed, defendants concede that the statutory restrictions on removal of FTC commissioners and administrative law judges ("ALJs") violate Article II. And they do not defend the district court's ruling that *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), forecloses that conclusion. Those points confirm that plaintiffs will likely succeed on the merits of their Article II claim. So does the infirmity of defendants' sole response: that plaintiffs identify no "compensable harm" from the constitutional violation under *Collins v. Yellen*, 594 U.S. 220, 259 (2021). That conflates *Collins*'s analysis of the requirements for "retrospective relief," *id.* at 257, with plaintiffs' claim for *prospective* injunctive relief against an *ongoing* unconstitutional agency proceeding. Controlling law holds that merely "being subjected to unconstitutional agency authority" like a "proceeding by an unaccountable ALJ" is a "here-and-now injury" that warrants immediate relief. *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175, 191 (2023) (quotation marks omitted).

1

As to Article III, defendants ignore key aspects of *SEC v. Jarkesy*, 603 U.S. 109 (2024). *Jarkesy* recognized that "[t]he public rights exception is … an *exception*" with "no textual basis in the Constitution" that cannot apply unless a claim "historically could have been determined exclusively by [the executive and legislative] branches." *Id.* at 128, 131 (alteration in original). Defendants never mention these holdings, much less explain how the FTC's section 5 claims would satisfy this test. Nor could they, as adjudicating claims for unfair competition outside common-law courts has no historical pedigree. No more is needed to conclude that plaintiffs will likely succeed on their Article III claim.

What defendants do say regarding *Jarkesy* misapprehends the case. *Jarkesy* holds that Congress cannot remove common-law claims from Article III courts by replacing them with closely analogous statutory remedies. That principle applies even if a statutory claim is broader or narrower in some ways than its common-law forebearers. Defendants' reliance on minor differences between section 5 and its common-law antecedents thus misses the mark. In any event, defendants misconstrue the common-law rights at issue. Indeed, the few common-law cases they cite show that conduct analogous to what section 5 regulates *was* actionable at common law, so long as the right plaintiff sued.

Defendants likewise misconstrue plaintiffs' due-process claim, focusing on the statement in *Withrow v. Larkin*, 421 U.S. 35 (1975), that "the combination of investigative and adjudicative functions does not, without more, constitute a due

2

process violation." *Id.* at 58. As plaintiffs' opening brief explained, there is "more" here. For the past quarter-century, the FTC's combination of functions has led it to find liability in every case it has decided on the merits. The FTC counters with contrary results from *before that time*. Those out-of-date statistics cannot change the fundamental unfairness of a tribunal that has denied litigants *any* success for 25 years running.

Finally, defendants fare no better in addressing the equities. Abandoning the district court's reasoning, they argue that plaintiffs have shown *no* irreparable harm. That is irreconcilable with *Axon*'s holding that being subjected to an unconstitutional agency proceeding is a "here-and-now injury" that "is impossible to remedy once the proceeding is over," 598 U.S. at 191—the very definition of irreparable harm. Defendants also fail to acknowledge the strong public interest in protecting constitutional rights.

The denial of a preliminary injunction should be reversed.

## ARGUMENT

## I. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS

### A. Defendants Concede The Article II Violations, And Their Lack-Of-Harm Arguments Are Misplaced

1. Plaintiffs' opening brief explained (pp.19-32) why the removal restrictions for both FTC commissioners and ALJs violate Article II. Defendants note (Br.18 n.2) that "[t]he United States is not defending" those restrictions.

3

Indeed, they previously told this Court that the "restrictions are unconstitutional and unenforceable." ECF 5495598 at 7 (Mar. 13, 2025). Defendants thus agree that plaintiffs are correct about Article II *on the merits*. That confirms that plaintiffs' Article II claim is beyond "likely" to succeed. No more is needed to conclude that the "most significant" preliminary-injunction factor, *Cigna Corporation v. Bricker*, 103 F.4th 1336, 1342 (8th Cir. 2024), is satisfied.

Citing *Collins v. Yellen*, defendants assert (Br.15) that plaintiffs' Article II claim nonetheless fails because plaintiffs have not shown that the removal restrictions inflicted "compensable harm." The implication of that assertion—an implication defendants notably do not state expressly—is that prospective injunctive relief is *never* available for unconstitutional removal restrictions, since a prerequisite for such relief is that the harm *not* be "compensa[bl]e." *Monsanto Company v. Geertson Seed Farms*, 561 U.S. 139, 156-157 (2010). *Collins* does not support that conclusion. It addressed only the requirements for "retrospective relief," i.e., *after* an unconstitutionally insulated officer already acted. 594 U.S. at 257. Retrospective relief was "the only remaining remedial question" there because the plaintiffs "no longer ha[d] a live claim for prospective relief." *Id.* The Court thus framed the issue—as defendants acknowledge (Br.14)—as whether the insulated officer's actions were "void." *Collins*, 594 U.S. at 257-258.

Here, by contrast, plaintiffs do not seek to declare any agency action "void," *Collins*, 594 U.S. at 257-258. In particular, plaintiffs are not, as defendants suggest

4

(Br.16), seeking to vacate the 2024 order "initiat[ing]" the FTC "enforcement proceeding." Even if *that* order were valid under *Collins*—on the theory that the commissioners at the time of the order had the then-President's support—plaintiffs would still object to the *continuation* of the proceeding before an ALJ and commissioners who are unconstitutionally insulated from removal by President Trump. Plaintiffs instead seek *prospective* relief: an injunction against an ongoing unconstitutional proceeding. As other courts have recognized about similar lawsuits, *Collins* did not consider the showing needed to justify that remedy. *See Cochran v. SEC*, 20 F.4th 194, 210 (5th Cir. 2021) (subsequent history omitted); *Energy Transfer, LP v. NLRB*, 742 F.Supp.3d 755, 760 (S.D. Tex. 2024).

Defendants' reliance on *Bhatti v. Federal Housing Finance Agency*, 97 F.4th 556 (8th Cir. 2024), is misplaced for the same reason. Whatever *Bhatti* says about the "mean[ing]" of *Collins*'s "compensable harm" language (Defs.' Br.15), it does not apply here because, like *Collins*, *Bhatti* involved only retrospective relief. Indeed, this Court had previously held that the plaintiffs there had "standing to seek *only* retrospective relief. *Bhatti v. Federal Housing Finance Agency*, 15 F.4th 848, 852 (8th Cir. 2021). *Bhatti*, like *Collins*, thus did not consider the requirements for prospective relief.

In any event, the requirement defendants say *Bhatti* imposes would be readily satisfied here if it applied. Defendants say (Br.16) that *Bhatti* means plaintiffs must demonstrate a "nexus" between the removal restrictions and a "concrete" harm. Put

5

differently, they say (Br.17) that "plaintiffs must demonstrate concrete harm caused by the removal restriction … to be entitled to relief." Plaintiffs have done that by invoking the "'here-and-now injury'" *Axon* recognized of "being subjected to unconstitutional agency authority," like "a proceeding by an unaccountable ALJ." 598 U.S. at 191 (quoting *Seila Law LLC v. CFPB*, 591 U.S. 197, 212 (2020)) (other quotation marks omitted). As courts have recognized, that "harm is both directly caused by the unconstitutional removal provisions and directly redressed by the requested relief" of an injunction against the ongoing proceeding. *Energy Transfer*, 742 F.Supp.3d at 760. Accordingly, any "causal-harm requirement" is "readily satisfied" when a plaintiff seeks prospective injunctive relief against an ongoing, unconstitutional agency proceeding. *Id.* at 761; *accord Aunt Bertha v. NLRB*, 2024 WL 4202383, at *2 (N.D. Tex. Sept. 16, 2024); *Space Exploration Technologies Corporation v. NLRB*, 741 F.Supp.3d 630, 639-640 (W.D. Tex. 2024) (subsequent history omitted).

2. The fact that plaintiffs seek prospective relief from an ongoing proceeding distinguishes nearly all the cases defendants cite (Br.17-18). Most involved claims to vacate past actions by agency officials who had been improperly insulated. *See Community Financial Services Association of America, Ltd. v. CFPB*, 51 F.4th 616, 632 (5th Cir. 2022) (subsequent history omitted); *K&R Contractors, LLC v. Keene*, 86 F.4th 135, 139 (4th Cir. 2023); *Kaufmann v. Kijakazi*, 32 F.4th 843, 846 (9th Cir. 2022); *Rodriguez v. SSA*, 118 F.4th 1302, 1305 (11th Cir. 2024);

6

*Calcutt v. FDIC*, 37 F.4th 293, 300 (6th Cir. 2022) (subsequent history omitted). And two others involved enforcement of agency orders that private parties sought to void for that same reason. *See CFPB v. National Collegiate Master Student Loan Trustee*, 96 F.4th 599, 603-604 (3d Cir. 2024) (subsequent history omitted); *CFPB v. Law Offices of Crystal Moroney, P.C.*, 63 F.4th 174, 177 (2d Cir. 2023). These cases thus all involved invalidating *past* actions; none addressed a collateral challenge to an ongoing proceeding.

Defendants suggest (Br.18) that *Community Financial* and *Calcutt* rejected *any* distinction between "prospective and retrospective relief," but that is misleading. Those cases hold only that this distinction lacks relevance to "an adjudication that has already ended," *Calcutt*, 37 F.4th at 316, or a rule that has already been promulgated, *Community Financial*, 51 F.4th at 631. In such cases, the injury—whether prospective or retrospective—stems from the resulting order or rule, not the adjudication. So the question, as in *Collins*, is whether the *order* is "void." 594 U.S. at 257-258. Here, by contrast, plaintiffs' injury stems from the ongoing proceeding, so the proceeding must end if it is unconstitutional.

Defendants' two remaining cases—*Leachco, Inc. v. Consumer Products Safety Commission*, 103 F.4th 748 (10th Cir. 2024) (subsequent history omitted), and *YAPP USA Automobile Systems, Inc. v. NLRB*, 2024 WL 4489598 (6th Cir. Oct. 13, 2024)—did decline to enjoin allegedly unconstitutional agency proceedings on the theory that the plaintiffs could not satisfy *Collins*. But like defendants, those

7

decisions misread *Collins* and fail to follow *Axon*. They of course are not binding here (indeed, *YAPP*'s extension of *Calcutt* is not even binding in the Sixth Circuit), and this Court should decline to follow them for the reasons discussed.

3. Defendants argue in a footnote (Br.18 n.2) that President Trump's recent removal of two FTC commissioners and a member of the Merit Systems Protection Board ("MSPB") "underscore[s] that plaintiffs cannot show that the President has been improperly inhibited from exercising control over the FTC officials responsible for the challenged administrative proceeding." As an initial matter, this argument says nothing about the fact that plaintiffs remain subject to an unaccountable ALJ, which independently demonstrates likely success on their Article II claim. Regardless, the FTC and MSPB officials' ongoing lawsuits challenging their removals highlight the risk that plaintiffs will be further subjected to unconstitutionally insulated agency authority. Despite the firings, the statutory removal limitations remain on the books, and the commissioners argue in their pending summary-judgment motion that "the President's attempt to remove them" is a "legal nullity." Memorandum 31, *Slaughter v. Trump*, No. 1:25-cv-909 (D.D.C. Apr. 11, 2025), ECF 20-2. Commissioner Slaughter seeks injunctive relief precluding "interfer[ence] with [her] continued service." *Id.* at 34. Commissioner Bedoya resigned on June 9, 2025, but still seeks declaratory and injunctive relief. *See* Notice 1, *id.*, ECF 46. The MSPB member's challenge likewise continues; the

8

Supreme Court stayed an injunction blocking the removal but did "not ultimately decide" the merits, Opinion 1, *Trump v. Wilcox*, No. 24A966 (U.S. May 22, 2025).

## B. *Jarkesy* Forecloses Defendants' Attempts To Adjudicate Plaintiffs' Private Rights Outside Article III Courts

Plaintiffs will also likely succeed on their Article III claim, because the FTC seeks to adjudicate private rights that the Constitution requires an Article III court to resolve. Opening Br.33-42. In prohibiting unfair methods of competition and unfair practices, section 5 of the FTC Act—like the anti-fraud statute in *Jarkesy*—"target[s] the same basic conduct" as common-law torts, making Article III adjudication "mandatory." 603 U.S. at 125, 128. Defendants' responses, which rest on the "public rights" exception to Article III adjudication (Defs.' Br.21), lack merit.

1. For starters, defendants ignore central parts of *Jarkesy*. For example, *Jarkesy* held that the public-rights exception applies only if the relevant claim "historically could have been determined *exclusively* by [the executive and legislative] branches." 603 U.S. at 128 (alteration in original) (emphasis added). For example, "the political branches had traditionally held exclusive power over" the "assessment of tariffs," so that issue does "not implicate Article III." *Id.* at 130 (discussing *Ex parte Bakelite Corporation*, 279 U.S. 438 (1929), *cited in* Defs.' Br.21, 27). Defendants make *no* argument that the claims here similarly fit *Jarkesy*'s "exclusive power" requirement. Indeed, the claims here do not have anything to do with the "performance of the constitutional functions of the executive and legislative

9

departments" (Defs.' Br.20), so they do not fit defendants' own conception of the public-rights exception.

Defendants likewise ignore *Jarkesy*'s central theme that the "public rights exception is … an *exception*," one with "no textual basis in the Constitution" that must be carefully circumscribed to avoid "swallow[ing] the rule."  603 U.S. at 131. That imposes a high bar on the government to justify non-Article III adjudication— a bar defendants never acknowledge, let alone try to surmount.

2.      Defendants similarly do not dispute that under *Jarkesy*, statutory claims that sufficiently resemble common-law antecedents implicate private rights that courts, not agencies, must adjudicate.  Instead, they argue (Br.21) that section 5 creates a "new cause of action and equitable remed[y]" without the same nexus to common-law claims as in *Jarkesy*.  As shown by defendants' own cases—and by plaintiffs' historical evidence, which defendants largely ignore—that is incorrect.

Against plaintiffs' ample evidence (Opening Br.37-39) of section 5's ties to common-law claims of restriction of trade, monopoly, and unfair dealing, defendants offer (Br. 21-22) just two "common-law and equitable precedent[s]": *New York & Rosendale Cement Company v. Coplay Cement Company*, 44 F. 277 (C.C.E.D. Pa. 1890), and *American Washboard Company v. Saginaw Manufacturing Company*, 103 F. 281 (6th Cir. 1900).  But even that thin rejoinder does not help defendants. Both decisions corroborate that while only certain plaintiffs had standing, unfair or deceptive conduct *was* actionable at common law.  In *New York*, for example, a

Appellate Case: 25-1383     Page: 17     Date Filed: 06/10/2025 Entry ID: 5525740

manufacturer sold "Rosendale Cement" that was not made in Rosendale.  44 F. at 279.  The court held that injured "customers" and "possibly … the states" could sue, but rival merchants could not.  *Id.*  Similarly, *American Washboard* held that when a manufacturer sells "false[ly] branded" goods, a "private right of action arises" for an injured consumer who "buy[s] the goods," but not for a competing manufacturer. 103 F. at 284-285.

These cases therefore establish only that section 5 expanded the list of eligible plaintiffs, from customers and possibly states at common law to the federal government.  That was equally true in *Jarkesy* because "common law fraud" was an action between private parties, whereas the securities statutes allow the government to seek civil penalties for fraud without the same "showing of harm."  603 U.S. at 125-126.  As *Jarkesy* explained, that difference (i.e., potential "enforcement by the executive") is not a "constitutionally relevant distinction."  *Id.* at 135.

Defendants thus ignore that the crux of *Jarkesy* is that limited variations from the common law do not transform a claim into a public right.  A statutory cause of action that has a "close relationship" to the common law involves private rights, even if it is "broader" or "narrower" in certain respects.  603 U.S. at 126.

Other circuits have recognized this.  For example, in *AT&T, Inc. v. FCC*, 135 F.4th 230 (5th Cir. 2025), the Fifth Circuit, applying *Jarkesy*, held that violations of a provision of the Federal Communications Act that restricts telecommunications carriers' disclosure of customer information could not be adjudicated

11

administratively because the statute was akin to common-law negligence. To determine violations, the court explained, the Federal Communications Commission asks whether a carrier "acted reasonably," an analysis that is "a staple of the common law" in negligence suits. *Id.* at 237. Because the statutory claim "'target[s] the same basic conduct' as the common law," it involves private rights—even if the statute uses no common-law terms and even if "the relationship between the [statutory] action and a common law analogue is not as obvious as it was in *Jarkesy*." *Id.* at 238 (quoting *Jarkesy*, 603 U.S. at 125). A contrary rule, the Fifth Circuit explained, "would blow a hole in what is meant to be a narrow exception to Article III." *Id.* at 239.

It is therefore irrelevant that Congress, when enacting the FTC Act, did not intend "to confine the forbidden methods [of competition] to fixed and unyielding categories" or "to those … forbidden at common law." *FTC v. R.F. Keppel & Brother, Inc.*, 291 U.S. 304, 310 (1934), *quoted in* Defs.' Br.23. What matters is that Congress "dr[e]w upon common law" as an "ancestor." *Jarkesy*, 603 U.S. at 125. In fact, defendants never contest that the FTC looks to the common law in gauging whether practices are "unfair" under the FTC Act, *see* Opening Br.38-39, just as courts "consider common law fraud principles when interpreting federal securities law," *Jarkesy*, 603 U.S. at 126.

Defendants are also wrong in asserting (Br.21) that a statutory claim's resemblance to the common law is relevant only when the statute imposes a

"punitive remedy," as opposed to injunctive relief. Article III prohibits Congress from "'withdraw[ing] from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, *or in equity*.'" *Jarkesy*, 603 U.S. at 132 (emphasis added) (quoting *Murray's Lessee v. Hoboken Land & Improvement Company*, 59 U.S. 272, 284 (1855)). Defendants do not dispute that suits seeking equitable remedies for unfair trade practices were frequently brought in courts of equity. *See* 3 Blackstone, *Commentaries* *431 (1768); Opening Br.40-41. The FTC's complaint combining a traditional common-law right with traditional equitable remedies thus heightens, rather than eliminates, the need for an Article III forum.

Defendants' attempt (Br.28-29) to distinguish cease-and-desist orders from injunctions on the ground that the FTC lacks contempt authority and must enforce its orders in court does not bring section 5 claims within the public-rights exception. Again, under *Jarkesy*, the statutory claim and its common-law analogue need not be "identical." 603 U.S. at 126. And the technical difference between cease-and-desist orders and injunctions is negligible in practice because just the *threat* of penalties for noncompliance with a cease-and-desist order is typically sufficient to "coerce any respondent to comply" (Defs.' Br.29), regardless of whether a court or the FTC ultimately issues those penalties.

Likewise meritless is defendants' attempt (Br.29) to analogize this case to tax-collection cases. To begin with, it is nothing like a judicial injunction for the

13

"Executive Branch [to] seize and sell a person's property for failure to pay taxes." *Id.* And the Tax Court—the "non-Article III forum" to which tax disputes can sometimes be "relegated" (*id.*)—"was created by Congress to provide *taxpayers* with a means of challenging assessments made by the Commissioner without first having to pay the alleged deficiency," *Samuels, Kramer & Company v. Commissioner of Internal Revenue*, 930 F.2d 975, 979 (2d Cir. 1991) (emphasis added). It is therefore entirely different from the FTC, an agency empowered to *bring* claims against private parties and impose remedies resembling judicial injunctions.

Finally, defendants repeatedly refer (Br.1, 10) to the FTC's "longstanding grant of … authority" to adjudicate section 5 claims—though without actually arguing that this bears on the analysis. That silence is undoubtedly because, as *Jarkesy* recognized, "practice" alone cannot "transmute a private right into a public one." 603 U.S. at 131 n.2. And of course, the relevant evidence for Article III purposes is not the FTC Act's early 20th-century heritage, but its common-law antecedents at the Founding.

3.    Yet another reason the public-right exception does not apply is that the FTC's proceeding directly implicates contract rights—plaintiffs' thousands of agreements with drug manufacturers and health plan sponsors—rights the Supreme Court has described as core "private rights," *Butler v. Pennsylvania*, 51 U.S. 402,

416 (1850), and "paradigmatic private rights," *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 56 (1989). *See* Opening Br.38.

Defendants respond (Br.27-28) that the impact on plaintiffs' contracts is insufficient because other public rights also "touch[] on relations between private parties." That is unavailing: Plaintiffs' argument is specifically about *contract* rights, and it is grounded in Supreme Court precedent specifically addressing contract rights. As to that specific topic and precedent, defendants have nothing to say. In any event, the FTC's direct adjudication of plaintiffs' private contract rights is not analogous to prototypical public-rights cases that have an indirect effect on private interests, such as cases involving embezzlement of public monies, *Murray's Lessee*, 59 U.S. at 274-275; Congress's "absolute power" over immigration, *Oceanic Steam Navigation Company v. Stranahan*, 214 U.S. 320, 342 (1909); levying taxes, *Samuels*, 930 F.2d at 978; or compensation for data-sharing required by "a public regulatory scheme," *Thomas v. Union Carbide Agricultural Products Company*, 473 U.S. 568, 584 (1985). The rights the FTC adjudicates under section 5 involve private contracts that Congress did *not* create. Defendants cite no Supreme Court case permitting agencies to alter contract rights through common-law-inspired causes of action.

4. More generally, defendants cite no recent, binding, or persuasive case rejecting an Article III challenge to FTC adjudication. The nearly century-old (or

Appellate Case: 25-1383    Page: 22    Date Filed: 06/10/2025 Entry ID: 5525740

older) cases they do cite are all divorced from *Jarkesy* and the modern Article III standards it applied.

The only two cases defendants cite that address Article III challenges (Br.26-27) each offered no meaningful analysis of the public-rights exception. In *FTC v. A. McLean & Son*, 84 F.2d 910 (7th Cir. 1936), the Seventh Circuit rejected the Article III challenge with no more analysis than the conclusory statement "[w]e think there is no merit in [it]," *id.* at 912. That (non-binding) ruling's complete lack of reasoning renders it unpersuasive. The same is true of *National Harness Manufacturers Association v. FTC*, 268 F. 705 (6th Cir. 1920), which never mentioned the public-rights exception or analyzed whether the statutory claim was in the nature of a common-law action, *id.* at 707. The court instead perceived no Article III violation because the "statute give[s] a right of [judicial] review" to private parties. *Id.* As *Jarkesy* makes clear, the availability of judicial review does not excuse compliance with Article III: Private parties also have the right to judicial review of SEC orders finding a securities-law violation, yet the SEC must bring those claims in court. 603 U.S. at 119.

None of defendants' remaining cases addressed the Article III challenge here. As plaintiffs explained (Opening Br.41-42), *Arkansas Wholesale Grocers' Association v. FTC*, 18 F.2d 866 (8th Cir. 1927), addressed a different issue: "the constitutionality of the [FTC Act] provision … making the findings of the commission, if supported by testimony, conclusive," *id.* at 872 (Trieber, J.,

concurring).  It never even mentioned Article III.  Defendants' contrary contention—that in passing on an entirely separate question about a separate provision, *Arkansas Wholesale* "necessarily upheld the FTC's ability to adjudicate and determine matters of public right" (Br.30)—is meritless.  Defendants cite no case or other authority in the century since *Arkansas Wholesale* was decided that has read the case as they do.  And as the Supreme Court has explained, "[c]onstitutional rights are not defined by inferences from opinions which did not address the question at issue." *Texas v. Cobb*, 532 U.S. 162, 169 (2001).

Defendants' other cases (Br.23-25) are either inapposite or confirm the common-law antecedents Congress built on in the FTC Act.  *FTC v. Winsted Hosiery Company*, 258 U.S. 483 (1922), relied on common-law precedent to hold that section 5 prohibited the conduct at issue, explaining that the prohibition on such conduct "has long been a part of the law of unfair competition," *id.* at 494 & n.2.  That decision *supports* plaintiffs' Article III claim, demonstrating the common-law antecedents to section 5 that defendants disavow.  The same is true of *FTC v. Balme*, 23 F.2d 615 (2d Cir. 1928), which relied on the common law of unfair competition in addressing challenges to section 5, *id.* at 620-621.  The challenge there, moreover, was to section 5's lack of "any standard of conduct" to guide the FTC, its "penal" nature, and its authorization of agency "legislat[ion]," *id.* at 621—not agency adjudication of private rights.  As for *A.L.A. Schechter Poultry Corporation v. United States*, 295 U.S. 495 (1935), it addressed the non-delegation doctrine; it never

17

mentioned Article III or private rights.  Nor did *FTC v. Beech-Nut Packing Company*, 257 U.S. 441 (1922), which addressed only whether section 5 is broader than the Sherman Act.

That many of the above cases were decided at the same time as some of the Supreme Court's early public-rights decisions (*see* Defs.' Br.27) changes nothing. Unlike those decisions, defendants' cases, as explained, did *not* address the public-rights exception.  Neither defendants' cases nor the contemporaneous public-rights decisions that *Jarkesy* acknowledged suggest any basis for a different result here from the one the Supreme Court reached in *Jarkesy* itself.

### C.   Defendants Ignore Plaintiffs' Actual Due-Process Claim

Plaintiffs will likely succeed on their due-process claim.  As plaintiffs explained (Opening Br.42-46), the facts that (1) the FTC melds "the functions of investigator, prosecutor, and judge under one roof," *Axon*, 598 U.S. at 215 (Gorsuch, J., concurring in judgment), and (2) it "has not lost a single case in the past quarter-century," *Axon Enterprises, Inc. v. FTC*, 986 F.3d 1173, 1187 (9th Cir. 2021) (subsequent history omitted), *together* establish that plaintiffs have no chance of a fair trial before the agency.

In response, defendants spend pages (Br.30-34) recounting *Withrow* and lower-court cases applying it.  But both *Withrow* and those cases hold that the fusion of investigative and adjudicative functions is not enough to violate due process "without more."  421 U.S. at 58.  Plaintiffs do not rely on that fusion "without more."

They also rely on the FTC's perfect in-house win rate for 25 years.  Opening Br.43-44.

Defendants' attempt to refute that perfect win rate goes nowhere.  They mischaracterize (Br.34) plaintiffs' brief as arguing that "the FTC has 'found liability in *every* case in which it has ruled on the merits'" since time immemorial.  What plaintiffs argued (Opening Br.43) is that the FTC has found liability in every such case "[f]or the past quarter century"—a critical qualifier the FTC omits in quoting plaintiffs' brief.  It is thus irrelevant that a study defendants cite (Br.34-35) found that the Commission dismissed 16% of its administrative cases on the merits *since 1977*—decades before the FTC's win streak began.  Indeed, the study confirms *plaintiffs'* assertion about the FTC's more recent record, explaining that "for the [prior] decade" (2006-2016) the FTC's win rate was functionally "100 percent." Ohlhausen, *Administrative Litigation at the FTC*, 12 J. Competition L. & Econ. 623, 626 & n.9 (2016).  And defendants never dispute that this streak has continued since 2016.  Even if the FTC was fair at some point, then, it is not today—and has not been in this millennium.

Nor is there merit to defendants' claim (Br.35) that the FTC's perfect win rate is "a product of caution and due diligence on the FTC's part in deciding which discretionary enforcement actions to bring."  The FTC's dismal record in federal court—which plaintiffs discussed (Opening Br.43-44) and defendants notably ignore—refutes that explanation.  It is inconceivable that the FTC would bring only

Appellate Case: 25-1383    Page: 26    Date Filed: 06/10/2025 Entry ID: 5525740

its strongest cases in-house, where the Commission adjudicates its own allegations, while saving its weakest claims for a neutral Article III adjudicator. The only explanation is structural bias.

Defendants also attempt (Br.35) to dismiss statistics as categorically irrelevant. The cases they cite do not support that position. *Perkins v. Astrue*, 648 F.3d 892 (8th Cir. 2011), held that the statistical evidence *in that case*—a minor "one percent" discrepancy between an ALJ's remand rate in cases involving a particular firm and the "national average remand rate"—was "insufficient to demonstrate bias," *id.* at 903. And *Singh v. Garland*, 20 F.4th 1049 (5th Cir. 2021), involved "raw statistic[s]" detached from any structural bias or "material evidence of … 'hostility,'" *id.* at 1055. Here, by contrast, the statistics are eye-popping, and the problem is the *combination* of the FTC's skewed structural incentives and evidence that those incentives have consistently skewed outcomes. Those are assuredly "special facts" that show "the risk of unfairness is intolerably high." *Withrow*, 421 U.S. at 58.

Defendants' century-old FTC cases—*Chamber of Commerce of Minneapolis v. FTC*, 280 F. 45 (8th Cir. 1922), and *National Harness Manufacturers' Association v. FTC*, 268 F. 705 (6th Cir. 1920)—are equally inapposite. As plaintiffs explained (Opening Br.44-45), those cases both dealt with an FTC that bears little resemblance to today's agency and lacked the consistent win rate that distinguishes the modern FTC from other agencies. Defendants do not engage with that argument.

20

Finally, defendants are wrong in contending (Br.35) that "the district court correctly noted that it likely lacked jurisdiction over plaintiffs' statistical due-process challenge." The court held it *had* jurisdiction over plaintiffs' "structural" arguments, App.338; R. Doc. 59 at 16—arguments that necessarily include plaintiffs' reliance on the FTC's in-house win rate. Indeed, the due-process claim in *Axon* itself included an allegation about the same agency's success rate, Complaint ¶7, *Axon*, No. 2:20-cv-14 (D. Ariz. Jan. 3, 2020), and the Supreme Court held that federal courts had jurisdiction over that claim, 598 U.S. at 189. The district court here held only that it likely lacked jurisdiction over plaintiffs' "case-specific arguments" regarding individual commissioners' bias toward pharmacy-benefit managers. App.337-338; R. Doc. 59 at 15-16. That is irrelevant because plaintiffs do not press those arguments on appeal. Opening Br.10 n.2.

## II. DEFENDANTS ABANDON THE DISTRICT COURT'S IRREPARABLE-HARM REASONING, AND THE ARGUMENTS THEY SUBSTITUTE ARE BASELESS

As discussed, *Axon* held that "being subjected to unconstitutional agency authority" before "an unaccountable ALJ … is a here-and-now injury" that "is impossible to remedy once the proceeding is over." 598 U.S. at 191 (quotation marks omitted). That is the definition of irreparable harm. And as plaintiffs explained (Opening Br.46-51), the district court erred in concluding that, although plaintiffs have shown irreparable harm under *Axon*, that harm is not sufficiently great to warrant preliminary injunctive relief.

21

Defendants abandon the district court's irreparable-harm reasoning: They do not contest that constitutional violations are typically irreparable or that the constitutional rights here are as deserving of protection as any others. Instead, defendants contend that *Axon* did not mean what it said. That is meritless.

*First*, it is irrelevant that *Axon* involved "jurisdiction" (Defs.' Br.38), rather than the requirements for preliminary relief, because the standards are the same. An injury is "irreparable" if it cannot "be remedied" at a later stage in the suit. *Jet Midwest International Company v. Jet Midwest Group, LLC*, 953 F.3d 1041, 1046 (8th Cir. 2020). *Axon*'s holding that the injury here "is impossible to remedy once the proceeding is over," 598 U.S. at 191, necessarily satisfies that requirement. Indeed, defendants never explain "how an injury that is completely 'impossible to remedy' (the standard [in *Axon*]) meaningfully differs from an injury that is 'beyond remediation' (the standard here)." *Alpine Securities Corporation v. FINRA*, 121 F.4th 1314, 1348 (D.C. Cir. 2024) (Walker, J., partial concurrence in the judgment and partial dissent) (subsequent history omitted). If the rule were otherwise, the harm in *Axon* would likely go unremedied in most cases because courts would not grant any relief until final judgment, by which time the agency proceeding likely would have run its course.

Put simply, "[i]rreparable harm occurs almost by definition when a[n] … entity demonstrates a likelihood that it is being regulated on an ongoing basis by an unconstitutionally structured agency." *John Doe Company v. CFPB*, 849 F.3d 1129,

22

1136 (D.C. Cir. 2017) (Kavanaugh, J., dissenting). That is why the Ninth Circuit stayed FTC proceedings in *Axon* itself—yet another point from plaintiffs' opening brief (pp.47-48) that defendants ignore.

*Second*, plaintiffs' irreparable harm argument was not, as defendants assert (Br.37), "made and rejected" in *FTC v. Standard Oil Company*, 449 U.S. 232 (1980). In fact, *defendants'* reading of that case was expressly rejected in *Axon*. *Standard Oil* held that the "expense and disruption" of defending against an administrative complaint that allegedly exceeded the FTC's *statutory* authority was not a sufficient injury to justify immediate review of the decision to issue that complaint. *Id.* at 244. But *Axon* distinguished that holding because the "claims" in *Standard Oil* were not constitutional, so the "accompanying harms" were different. 598 U.S. at 192. Unlike a mere statutory violation, *Axon* explained, "subjection to an unconstitutionally structured decisionmaking process" is a distinct injury from "litigation costs" alone and is irreparable "irrespective of its outcome." *Id.*

*Third*, defendants are wrong in saying (Br.37) that applying *Axon* to injunctive relief will "automatically" shut down every proceeding before the FTC, any ALJ, or any unconstitutionally structured agency. *Axon* rejected a similar argument, that allowing jurisdiction over preemptive challenges to unconstitutional agency proceedings would "impede the functioning of the agency" by opening the floodgates to district-court proceedings and accompanying relief. U.S. Br.50, *Axon*, No. 21-86, 2022 WL 3327460 (U.S. Aug. 8, 2022). The argument fares no better

23

here: Even putting aside that defendants' argument provides no basis to ignore pellucid Supreme Court precedent—and that the argument would leave victims of unconstitutional agency proceedings with no effective remedy for the injury *Axon* recognized—*Axon*'s analysis is relevant only to irreparable harm; a plaintiff must still satisfy the other factors for a preliminary injunction. Moreover, of those subject to unconstitutional proceedings, only a few ever sue under *Axon*, and even fewer seek preliminary injunctive relief. Given these constraints, "there will be no wave of preliminary injunctions." *Alpine Securities*, 121 F.4th at 1349 (Walker, J., partial concurrence in the judgment and partial dissent). Certainly, defendants provide no evidence of such a "wave" in the two years since *Axon*.

*Fourth*, the non-binding cases defendants cite (Br.39 & n.7) offer no other justification for ignoring *Axon*'s plain text. For example, *Space Exploration Technologies Corporation v. NLRB*, 129 F.4th 906 (5th Cir. 2025), did not discuss *Axon* at all. It applied circuit precedent to hold, in a different context, that the "sole [alleged] injuries stem[ming] from participating in a teleconference in an unconstitutional administrative proceeding" did not support an immediate appeal. *Id.* at 910. The alleged harm here—from a lengthy, *ongoing* proceeding—is vastly greater. Likewise, the D.C. Circuit's decision in *Alpine Securities* rested on pre-*Axon* circuit precedent—and "[i]mportantly," the regulated party there "d[id] not argue" that *Axon* was clear enough to require the panel's departure from that prior precedent. 121 F.4th at 1336. Indeed, the panel conceded that the interpretation of

24

*Axon* plaintiffs advance here was "arguable." *Id.* And one judge deemed it the only plausible reading, stating that "[n]othing about *Axon*'s reasoning ... excludes ... appl[ication] to a plaintiff's motion for a preliminary injunction." *Id.* at 1348-1349 (Walker, J., partial concurrence in the judgment and partial dissent).

Similarly, as explained (Opening Br.50-51; *supra* pp.7-8), *Leachco* and *YAPP* rest on defendants' misreading of *Collins*. They also endorse the slippery-slope argument that taking *Axon* at its word "creates an entitlement on the merits to a preliminary injunction in every case where such constitutional challenges are raised." *Leachco*, 103 F.4th at 759; *accord YAPP*, 2024 WL 4489598, at *3. As discussed, that reasoning is infirm.

Defendants therefore miss the mark in arguing (Br.37) that "plaintiffs have an adequate remedy at law" because "they can seek judicial review to set aside an adverse FTC decision" later. As discussed, *supra* pp.4-5, 21, plaintiffs' "claim is not about that order"—they would have the same claim if they "*won* before the agency"—but instead is "about subjection to an illegitimate proceeding," *Axon*, 598 U.S. at 191. As to "*that* grievance, the court of appeals can do nothing" on judicial review of a final FTC decision. *Id.* Defendants' two cited pre-*Axon* cases are not to the contrary; neither involved a plaintiff asserting it was subject to an ongoing proceeding before an unconstitutionally structured agency. *See Pieper v. United States*, 604 F.2d 1131, 1132-1134 (8th Cir. 1979); *Birch v. Mazander*, 678 F.2d 754, 755-756 (8th Cir. 1982).

25

Finally, citing a footnote in *Planned Parenthood Minnesota v. Rounds*, 530 F.3d 724 (8th Cir. 2008) (en banc), defendants assert (Br.39-40) that the lack of merit to plaintiffs' constitutional challenges "weaken[s]" any assertion of irreparable harm. But even setting aside that plaintiffs' constitutional challenges are each meritorious, that mischaracterizes the footnote in *Rounds*, which explained why this Court—having concluded the plaintiff was not "likely to prevail on the merits of its compelled speech claim"—"need not address" the remaining preliminary-injunction factors. 530 F.3d at 738 & n.11. *Rounds* does not authorize courts to downgrade an irreparable-harm assessment based on their evaluation of the merits. Indeed, in assessing irreparable harm, courts "assume[] … that the movant has demonstrated a likelihood that the non-movant's conduct violates the law" and then "examine only whether that violation, if true, inflicts irremediable injury." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 303 (D.C. Cir. 2006).

## III. DEFENDANTS' ARGUMENTS REGARDING THE BALANCE OF EQUITIES AND PUBLIC INTEREST ARE MERITLESS

In addressing the final preliminary-injunction factors, which merge here, defendants focus entirely on the government's and the public's interest in enforcing statutes, never even mentioning the strong public interest in protecting constitutional rights, *see* Opening Br.52 (citing *Carson v. Simon*, 978 F.3d 1051, 1061 (8th Cir. 2020) (per curiam)). In particular, defendants cite (Br.40-41) a single-justice in-chambers opinion to contend that the final factor weighs against an injunction

26

because "any time" the government is "enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." If that were true, this factor would always cut against an injunction when the challenge concerns enforcement of a statute. Defendants cite no court that has so held.

Moreover, having conceded that the statutory removal restrictions "are unconstitutional and unenforceable," *supra* p.4, defendants' asserted interest in statutory enforcement rings truly hollow. As courts have recognized time and again, there is "no public interest in the perpetuation of unlawful agency action." *League of Women Voters v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016); *accord, e.g.*, *R.J. Reynolds Vapor Company v. FDA*, 65 F.4th 182, 195 (5th Cir. 2023) (same).

Nor does defendants' recitation (Br.41) of other decisions denying injunctions pending appeal or preliminary injunctions support that result here. In this case, an injunction pending appeal was denied before plaintiffs could file their reply or address the impact on this case of President Trump's removal of the two remaining Democratic FTC commissioners. *See supra* p.8; Opening Br.32. As for the motion panel's order in *H&R Block, Inc. v. Himes*, No. 24-2626 (8th Cir. Sept. 13, 2024), it involved only removal claims, and the appeal was dismissed before briefing was even completed. Finally, *YAPP* and *Leachco* likewise concerned only removal claims and rest—as discussed, *supra* pp.7-8—on a misreading of *Collins*.

27

# CONCLUSION

The Court should reverse and remand with instructions for the district court to enter a preliminary injunction of the FTC's ongoing administrative proceeding.

June 9, 2025

ENU MAINIGI
CRAIG D. SINGER
STEVEN M. PYSER
CHARLES L. MCCLOUD
PATRICK DEVER
CHRISTOPHER BALDACCI
WILLIAMS & CONNOLLY LLP
680 Maine Avenue S.W.
Washington, D.C. 20024
(202) 434-5000

STEVEN A. ENGEL
MICHAEL COWIE
RANI HABASH
DECHERT LLP
1900 K Street N.W.
Washington, D.C. 20006
(202) 261-3481

*Counsel for Caremark Rx, L.L.C.*
*and Zinc Health Services, LLC*

MATTHEW S. ROZEN
GIBSON, DUNN & CRUTCHER LLP
1700 M Street N.W.
Washington, D.C. 20036
(202) 955-8500

THEODORE J. BOUTROUS JR.
SAMUEL LIVERSIDGE
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue

Respectfully submitted,

/s/ Daniel S. Volchok
DANIEL S. VOLCHOK
JENNIFER MILICI
PERRY A. LANGE
KEVIN M. LAMB
JOHN W. O'TOOLE
WILMER CUTLER PICKERING
    HALE AND DORR LLP
2100 Pennsylvania Avenue N.W.
Washington, D.C. 20037
(202) 663-6000
daniel.volchok@wilmerhale.com

KYLE EDWARDS HAUGH
WILMER CUTLER PICKERING
    HALE AND DORR LLP
50 California Street, Suite 3600
San Francisco, CA 94111
(628) 235-1000

CHARLES F. RULE
DANIEL J. HOWLEY
DEREK W. MOORE
RULE GARZA HOWLEY LLP
901 Seventh Street N.W.
Suite 600
Washington, D.C. 20001
(202) 843-9280

*Counsel for Express Scripts, Inc.;*
*Evernorth Health, Inc.; Ascent Health*
*Services LLC; and Medco Health*
*Services, Inc.*

Los Angeles, CA  90071
(213) 229-7420

*Counsel for OptumRx, Inc.;*
*OptumRx Holdings, LLC; and*
*Emisar Pharma Services LLC*

## CERTIFICATE OF COMPLIANCE

This document complies with the Federal Rule of Appellate Procedure 32(a)(7)(B)(i)-(ii) in that, according to the word-count feature of the word-processing system used to prepare this document (Microsoft Word Version 2502 Build 16.0.18526.20168), the brief contains 6,495 words, excluding the portions exempted by Rule 32(f), and uses Times New Roman size 14 font.

/s/ Daniel S. Volchok
DANIEL S. VOLCHOK

## CERTIFICATE OF FILING AND SERVICE

On June 9, 2025, the foregoing was filed using the Court's CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system. The brief and addendum have been scanned for viruses using Trellix software, version 5.8.0.161 and is virus free.

/s/ Daniel S. Volchok
DANIEL S. VOLCHOK